**UNITED STATES DISTRICT COURT**
**DISTRICT OF CONNECTICUT**

|  |  |
|---|---|
| Craig Moskowitz, *on behalf of himself and all others similarly situated*, | : Civil Action No.:  3:16-cv-01831-SRU |
| Plaintiff, | : **FIRST AMENDED CLASS ACTION** |
| v. | : **COMPLAINT** : **JURY TRIAL DEMANDED** |
| Fairway Group Holdings Corp., | : |
| Defendant. | : |

For this First Amended Class Action Complaint, the Plaintiff, Craig Moskowitz, by and through his undersigned counsel, pleading on his own behalf and on behalf of others similarly situated, states as follows:

## INTRODUCTION

1.      Plaintiff, Craig Moskowitz ("Plaintiff"), brings this class action for damages, injunctive relief, and declaratory relief from the illegal actions of Defendant Fairway Group Holdings Corp. ("Defendant" or "Fairway"). Defendant sent unauthorized automated text messages to Plaintiff's cellular phone in violation of the Telephone Consumer Protection Act (the "TCPA"), 47 U.S.C. § 227(b)(1)(A).

2.      Wireless spam is a growing problem in the United States.  In April 2012, the Pew Research Center found that 69% of texters reported receiving unwanted spam text messages, while 25% reported receiving spam texts weekly.  http://www.pewinternet.org/fact-sheets/mobile-technology-fact-sheet/ (last visited June 4, 2015); *see also* Nicole Perlroth, Spam Invades a Last Refuge, the Cellphone, N.Y.Times, April 8, 2012, at A1 ("In the United States,

consumers received roughly 4.5 billion spam texts [in 2011], more than double the 2.2 billion received in 2009 . . . .").

3.     Fairway operates a chain of supermarkets in New York City and surrounding areas.

4.     In an effort to market its products, Fairway established an automated text messaging program which introduced promotions and discounts to consumers via automated text messages to their cellular telephones.

5.     Fairway's automated text messages stated that consumers could respond "STOP" to stop or opt out of its text messages.  However, Fairway programmed its text-messaging system to blatantly disregard consumers 'STOP' requests.

6.     When consumers responded STOP, Fairway did not stop.  Instead, Fairway would acknowledge the consumer's opt-out request, then send additional telemarketing text messages. Fairway knew these consumers no longer wished to receive their messages but sent them anyway.

7.     Fairway's disregard for consumers' opt-out request constitutes a willful and knowing violation of the TCPA.

8.      Plaintiff is one such consumer, and sues Fairway for its TCPA violations individually and on behalf of all others similarly situated.

## JURISDICTION AND VENUE

9.     This Court has original jurisdiction over this matter pursuant to 28 U.S.C. § 1331. *Mims v. Arrow Fin. Serv., LLC*, 132 S. Ct. 740, 751-53 (2012).

10.     Venue is proper in this District pursuant to 28 U.S.C. § 1391, because Plaintiff resides in this District and because a substantial part of the events giving rise to the claim

occurred in this District.

## PARTIES

11.     Plaintiff is, and at all times mentioned herein was, an adult individual residing in Stamford, Connecticut.

12.     Defendant Fairway Group Holdings Corp. is a Delaware corporation headquartered at 2284 12th Avenue, New York, New York 10027.

## THE TELEPHONE CONSUMER PROTECTION ACT OF 1991

13.     The TCPA regulates, among other things, the use of automated telephone dialing systems ("ATDS").

14.     Specifically, 47 U.S.C. § 227(1)(A)(iii) prohibits any call using an ATDS to a cellular phone without prior express consent by the person being called, unless the call is for emergency purposes.

15.     47 U.S.C. § 227(a)(1) defines an ATDS as equipment having the capacity–

(A)     to store or produce telephone numbers to be called, using a random or sequential number generator; and

(B)     to dial such numbers.

16.     The FCC has clarified that text messages qualify as "calls" under the TCPA:

We affirm that under the TCPA, it is unlawful to make any call using an automatic telephone dialing system or an artificial or prerecorded message to any wireless telephone number.  Both the statute and our rules prohibit these calls, with limited exceptions, "to any telephone number assigned to a paging service, cellular telephone service, specialized mobile radio service, or other common carrier service, or any service for which the party is charged." **This encompasses both voice calls and text calls to wireless numbers including, for example, short message service (SMS) calls, provided the call is made to a telephone number assigned to such service.**

*In re Rules and Regulations Implementing the Telephone Consumer Protection Act of 1991*, Report and Order, 18 FCC Rcd. 14014, 14115 (July 3, 2003) (emphasis supplied); *see Gager v.*

3

*Dell Fin. Servs., LLC*, 727 F.3d 265, 269 n.2 (3d Cir. 2013).

17.    Further, the FCC has clarified that for telemarketing calls, auto-dialers must have

prior express *written* consent, meaning:

> an agreement, in writing, bearing the signature of the person called that clearly
> authorizes the seller to deliver or cause to be delivered to the person called
> advertisements or telemarketing messages using an automatic telephone dialing
> system or an artificial or prerecorded voice, and the telephone number to which
> the signatory authorizes such advertisements or telemarketing messages to be
> delivered.
>
>> (i) The written agreement shall include a clear and conspicuous disclosure
>> informing the person signing that:
>>
>> (A) By executing the agreement, such person authorizes the seller to
>> deliver or cause to be delivered to the signatory telemarketing calls using
>> an automatic telephone dialing system or an artificial or prerecorded
>> voice; and
>>
>> (B) The person is not required to sign the agreement (directly or
>> indirectly), or agree to enter into such an agreement as a condition of
>> purchasing any property, goods, or services.
>>
>> (ii) The term "signature" shall include an electronic or digital form of
>> signature, to the extent that such form of signature is recognized as a valid
>> signature under applicable federal law or state contract law.

47 C.F.R. § 64.1200(f)(8).

18.    Consumers may revoke prior express consent to receive auto-dialed calls "at any

time and through any reasonable means," including "directly in response to a call initiated or

made by a caller."  Telemarketing text message-senders are required to "give consumers a direct

opt-out mechanism such as a . . . reply of 'STOP' for text messages." 2015 FCC Ruling, at ¶¶ 47,

64.

19.    The FCC has ruled that "one-time texts confirming a request that no further text

messages be sent does not violate the TCPA" if the auto-dialer had prior express consent.  The

rule is "limited to texts that: 1) merely confirm the consumer's opt-out request and do not include

any marketing or promotional information; and 2) are the only additional message sent to the consumer after receipt of the opt-out request." *Rules and Regulations Implementing the Telephone Consumer Protection Act of 1991*, SoundBite Communications, Inc., Petition for Expedited Declaratory Ruling, CG Docket No. 02-278, Declaratory Ruling, 27 FCC Rcd 15391, at ¶¶ 8-11 (2012).

## ALLEGATIONS APPLICABLE TO PLAINTIFF

20.     Fairway placed automated telemarketing text messages to Plaintiff's cellular telephone number from telephone number 70416.

21.     Plaintiff messaged "50" to short code 70416 in response to a Fairway advertisement to receive $50 off a future purchase.

22.     In response to Plaintiff's "50" message, Fairway began sending Plaintiff text messages introducing additional promotions and discounts.

23.     On October 18, 2016, Fairway sent a text message to Plaintiff reading: "Fairway Market: Get $10 off when you tell us your preferred store."

24.     Fairway's message also included the instruction "Reply STOP to opt-out."

25.     Plaintiff responded to the text message by sending "STOP."

26.     Fairway's system immediately responded "Fairway Market Alerts: You are opted out of all campaigns on 70416 & will receive no more msgs."  This was a pre-scripted response automatically sent by Fairway's system which was programmed to handle opt-out requests.

27.     However, immediately following that opt-out confirmation message—within seconds—Fairway's system sent Plaintiff two additional telemarketing messages.  The first read "Let's do this!  Here is your link to register for GET $50:".  The second message read "Tap to Load Preview," and provided a link to Fairway's website.  The specific webpage contained an

offer to "GET $50" for joining Fairway's "rewards program":



    28.    Fairway's text messages contained pre-loaded content impersonal to Plaintiff.

    29.    The text messages sent to Plaintiff's cellular phone by Defendant were made with an ATDS as defined by 47 U.S.C. § 227(a)(1) and the FCC.  Defendant's system placed the texts automatically, using a list or database of telephone numbers and dialing without human intervention.

    30.    Plaintiff's cell phone number was obtained by Defendant and stored in a database containing thousands of other telephone numbers.  Defendant's text-messaging system periodically accessed Plaintiff's number within the database and sent it and thousands of other consumer's telephone numbers identical pre-scripted text messages promoting Fairway's products and services.

    31.    No human directed any single text message to Plaintiff's number.

32.     Plaintiff messaged Defendant "STOP" expecting the telemarketing messages to stop.  Plaintiff received and was frustrated and annoyed by Fairway's continued messages.

33.     Plaintiff's time was wasted tending to Fairway's telemarketing text messages sent after he expressly requested that they "STOP."

34.     The telephone number messaged by Defendant was assigned to a cellular telephone service for which Plaintiff incurs charges for incoming messages pursuant to 47 U.S.C. § 227(b)(1).

35.     Defendant did not place the text messages for an emergency purpose.

## CLASS ACTION ALLEGATIONS

**A.  The Class**

36.     Plaintiff brings this case as a class action pursuant to Fed. R. Civ. P. 23 on behalf of himself and all others similarly situated.

37.     Plaintiff represents, and is a member of the following class (the "Class"):

**All persons within the United States who, within four years of this Complaint, received on their cellular telephone at least one text message from Defendant, replied "STOP" to the text message and thereafter received at least one additional text message to the same cellular telephone number.**

38.     Defendant and its employees or agents are excluded from the Class. Plaintiff does not know the number of members in the Class, but believes the class members number in the several thousands, if not more. Thus, this matter should be certified as a class action to assist in the expeditious litigation of this matter.

**B.  Numerosity**

39.     Upon information and belief, Defendant sent text messages to cellular telephone numbers of thousands of consumers throughout the United States without their prior express written consent.  The members of the Class, therefore, are believed to be so numerous that

joinder of all members is impracticable.

40.     The exact number and identities of the Class members are unknown at this time and can only be ascertained through discovery.  Identification of the Class members is a matter capable of ministerial determination from Defendant's records.

**C.  <u>Common Questions of Law and Fact</u>**

41.     There are questions of law and fact common to the Class that predominate over any questions affecting only individual Class members.  These questions include:

      a.   Whether  Defendant sent non-emergency text messages to Plaintiff and Class members' cellular telephones using an ATDS;

      b.   Whether  Defendant had prior express written consent to send its automated text messages;

      c.   Whether Defendant's conduct was knowing and/or willful;

      d.   Whether Defendant is liable for damages, and the amount of such damages; and

      e.   Whether Defendant should be enjoined from such conduct in the future.

42.     The common questions in this case are capable of having common answers.  If Plaintiff's claim that Defendant routinely sends automated text messages to telephone numbers assigned to cellular telephone services without prior express written consent is accurate, Plaintiff and the Class members will have identical claims capable of being efficiently adjudicated and administered in this case.

**D.  Typicality**

43.  Plaintiff's claims are typical of the claims of the Class members, as they are all based on the same factual and legal theories.

**E.  Protecting the Interests of the Class Members**

44.  Plaintiff will fairly and adequately protect the interests of the Class and has retained counsel experienced in handling class actions and claims involving unlawful business practices.  Neither Plaintiff nor his counsel has any interests which might cause them not to vigorously pursue this action.

**F.  Proceeding Via Class Action is Superior and Advisable**

45.  A class action is the superior method for the fair and efficient adjudication of this controversy.  The interest of Class members in individually controlling the prosecutions of separate claims against Defendant is small because it is not economically feasible for Class members to bring individual actions.

46.  Management of this class action is unlikely to present any difficulties.  Several courts have certified classes in TCPA actions.  These cases include, but are not limited to: *Mitchem v. Ill. Collection Serv.*, 271 F.R.D. 617 (N.D. Ill. 2011); *Sadowski v. Med1 Online, LLC*, 2008 WL 2224892 (N.D. Ill., May 27, 2008); *CE Design Ltd. V. Cy's Crabhouse North, Inc.*, 259 F.R.D. 135 (N.D. Ill. 2009); *Lo v. Oxnard European Motors, LLC*, 2012 WL 1932283 (S.D. Cal., May 29, 2012).

## COUNT I
## Violations of the Telephone Consumer Protection Act, 47 U.S.C. § 227, *et seq.*

47.  Plaintiff repeats and realleges the above paragraphs of this Complaint and incorporates them herein by reference.

48.     Defendant sent multiple automated text messages to cellular numbers belonging to Plaintiff and the other members of the Class without their prior express written consent.

49.     Each of the aforementioned messages by Defendant constitutes a violation of the TCPA.

50.     Plaintiff and the Class are entitled to an award of $500.00 in statutory damages for each message sent in violation of the TCPA pursuant to 47 U.S.C. § 227(b)(3)(B).

51.     Additionally, Plaintiff and the Class are entitled to and seek injunctive relief prohibiting such conduct by Defendant in the future.

52.     Further, Plaintiff and the Class are entitled to and seek a declaration from Defendant that:

- Defendant violated the TCPA;

- Defendant used an ATDS to send telemarketing text messages to consumers; and

- Defendant placed calls to the Plaintiff and the Class without prior express written consent.

## COUNT II
## Knowing and/or Willful Violations of the
## Telephone Consumer Protection Act,
## 47 U.S.C. § 227, *et seq.*

53.     Plaintiff repeats and realleges the above paragraphs of this Complaint and incorporates them herein by reference.

54.     Defendant knowingly and/or willfully sent multiple automated text messages to cellular numbers belonging to Plaintiff and the other members of the Class without their prior express written consent.

55.     Each of the aforementioned messages by Defendant constitutes a knowing and/or willful violation of the TCPA.

10

56.     As a result of Defendant's knowing and/or willful violations of the TCPA, Plaintiff and the Class are entitled to an award of treble damages up to $1,500.00 for each call in violation of the TCPA pursuant to 47 U.S.C. § 227(b)(3)(B) and 47 U.S.C. § 227(b)(3)(C).

57.     Additionally, Plaintiff and the Class are entitled to and seek injunctive relief prohibiting such conduct by Defendant in the future.

58.     Further, Plaintiff and the Class are entitled to and seek a declaration from Defendant that:

- Defendant knowingly and/or willfully violated the TCPA;

- Defendant knowingly and/or willfully used an ATDS to message Plaintiff and the Class;

- Defendant knowingly and/or willfully disregarded Plaintiff and the Class members' requests that the automated text messages stop;

- Defendant knowingly and/or willfully messaged Plaintiff and the Class with telemarketing text messages knowing it did not have their prior express written consent to do so;

- It is Defendant's practice and history to place automated telephone calls to consumers without their prior express consent.

## **PRAYER FOR RELIEF**

WHEREFORE, Plaintiff prays that the Court grant Plaintiff and the Class the following relief against Defendant as follows:

1.     Injunctive relief prohibiting such violations of the TCPA by Defendant in the future;

2.     Declaratory relief as stated;

3.     Statutory damages of $500.00 for each and every call in violation of the TCPA

pursuant to 47 U.S.C. § 227(b)(3)(B);

4.   Treble damages of up to $1,500.00 for each and every call in violation of the TCPA

pursuant to 47 U.S.C. § 227(b)(3)(C);

5.   An award of attorneys' fees and costs to counsel for Plaintiff and the Class; and

6.   Such other relief as the Court deems just and proper.

**TRIAL BY JURY DEMANDED ON ALL COUNTS**

Dated: November 30, 2016

Respectfully submitted,

By:    */s/ Sergei Lemberg*_____
Sergei Lemberg, Esq.
LEMBERG LAW, LLC
43 Danbury Road
Wilton, CT 06897
Telephone: (203) 653-2250
Facsimile:  (203) 653-3424
*Attorneys for Plaintiff*

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that on December 1, 2016, a true and correct copy of the foregoing was served electronically by the U.S. District Court for the District of Connecticut Electronic Document Filing System (ECF) and that the document is available on the ECF system.

<u>*/s/ Sergei Lemberg*</u>
Sergei Lemberg, Esq.

13