UNITED STATES DISTRICT COURT
DISTRICT OF CONNECTICUT

| | |
|---|---|
| Craig Moskowitz, *on behalf of himself and all others similarly situated*, | : <br> : <br> : Civil Action No.: 3:16-cv-01831-SRU <br> : |
| Plaintiff, | : <br> : **SECOND AMENDED CLASS ACTION** |
| v. | : **COMPLAINT** <br> : **JURY TRIAL DEMANDED** |
| Fairway Group Holdings Corp., | : <br> : |
| Defendant. | : |

For this Second Amended Class Action Complaint, the Plaintiff, Craig Moskowitz, by and through his undersigned counsel, pleading on his own behalf and on behalf of others similarly situated, states as follows:

# INTRODUCTION

1. Plaintiff, Craig Moskowitz ("Plaintiff"), brings this class action for damages, injunctive relief, and declaratory relief from the illegal actions of Defendant Fairway Group Holdings Corp. ("Defendant" or "Fairway"). Defendant sent unauthorized automated text messages to Plaintiff's cellular phone in violation of the Telephone Consumer Protection Act (the "TCPA"), 47 U.S.C. § 227(b)(1)(A).

2. The TCPA regulates, among other things, the use of automated telephone dialing systems ("ATDS").

3. Specifically, 47 U.S.C. § 227(1)(A)(iii) prohibits any call using an ATDS to a cellular phone without prior express consent by the person being called, unless the call is for emergency purposes.

4. Wireless spam is a growing problem in the United States. In April 2012, the Pew Research Center found that 69% of texters reported receiving unwanted spam text messages, while 25% reported receiving spam texts weekly. http://www.pewinternet.org/fact-sheets/mobile-technology-fact-sheet/ (last visited June 4, 2015); *see also* Nicole Perlroth, Spam Invades a Last Refuge, the Cellphone, N.Y.Times, April 8, 2012, at A1 ("In the United States, consumers received roughly 4.5 billion spam texts [in 2011], more than double the 2.2 billion received in 2009 . . . .").

5. Fairway operates a chain of supermarkets in New York City and surrounding areas.

6. In an effort to market its products, Fairway established an automated text messaging program which introduced promotions and discounts to consumers via automated text messages to their cellular telephones. The program violated the TCPA in two ways.

7. First, Fairway did not obtain signed prior express written consent from consumers before enrolling them in the automated text program. The FCC has mandated that for telemarketing messages, auto-dialers must have prior express *written* consent, meaning:

> [A]n agreement, in writing, bearing the signature of the person called that clearly authorizes the seller to deliver or cause to be delivered to the person called advertisements or telemarketing messages using an automatic telephone dialing system or an artificial or prerecorded voice, and the telephone number to which the signatory authorizes such advertisements or telemarketing messages to be delivered.
>
> (i) The written agreement shall include a clear and conspicuous disclosure informing the person signing that:
>
> (A) By executing the agreement, such person authorizes the seller to deliver or cause to be delivered to the signatory telemarketing calls using an automatic telephone dialing system or an artificial or prerecorded voice; and
>
> (B) The person is not required to sign the agreement (directly or

> indirectly), or agree to enter into such an agreement as a condition of purchasing any property, goods, or services.
>
> (ii) The term "signature" shall include an electronic or digital form of signature, to the extent that such form of signature is recognized as a valid signature under applicable federal law or state contract law.

47 C.F.R. § 64.1200(f)(8).

8. Before enrolling Plaintiff and class members in its telemarketing program, Fairway did not (1) provide the disclosures required by § 64.1200(f)(8) and (2) did not seek nor obtain a signed agreement permitting automated text messages.

9. Fairway's automated text messages violated the TCPA also because they ignored cease messaging directives. Fairway's automated text messages stated that consumers could respond "STOP" to stop or opt out of its text messages. However, Fairway programmed its text-messaging system to blatantly disregard consumers 'STOP' requests.

10. When consumers responded STOP, Fairway did not stop. Instead, Fairway would acknowledge the consumer's opt-out request, then send additional telemarketing text messages. Fairway knew these consumers no longer wished to receive their messages but sent them anyway.

11. Fairway's disregard for consumers' opt-out request constitutes a willful and knowing violation of the TCPA.

12. Plaintiff is one such consumer, and sues Fairway for its TCPA violations individually and on behalf of all others similarly situated.

## **JURISDICTION AND VENUE**

13. This Court has original jurisdiction over this matter pursuant to 28 U.S.C. § 1331. *Mims v. Arrow Fin. Serv., LLC*, 132 S. Ct. 740, 751-53 (2012).

14. Venue is proper in this District pursuant to 28 U.S.C. § 1391, because Plaintiff

resides in this District and because a substantial part of the events giving rise to the claim occurred in this District.

## PARTIES

15. Plaintiff is, and at all times mentioned herein was, an adult individual residing in Stamford, Connecticut.

16. Defendant Fairway Group Holdings Corp. is a Delaware corporation headquartered at 2284 12th Avenue, New York, New York 10027.

## ALLEGATIONS APPLICABLE TO PLAINTIFF

17. Fairway placed automated telemarketing text messages to Plaintiff's cellular telephone number from telephone number 70416.

18. Plaintiff messaged "50" to short code 70416 in response to a Fairway advertisement to receive $50 off a future purchase.

19. In response to Plaintiff's "50" message, Fairway began sending Plaintiff text messages introducing additional promotions and discounts.
At no time did Fairway seek or obtain Plaintiff's, or any class member's, signed agreement to be auto-messaged telemarketing material. Further, at no time did Fairway provide Plaintiff, or any class member, the disclosures required by 47 C.F.R. § 64.1200(f)(8).

20. On October 18, 2016, Fairway sent a text message to Plaintiff reading: "Fairway Market: Get $10 off when you tell us your preferred store."

21. Fairway's message also included the instruction "Reply STOP to opt-out."

22. Plaintiff responded to the text message by sending "STOP."

23. Fairway's system immediately responded "Fairway Market Alerts: You are opted out of all campaigns on 70416 & will receive no more msgs." This was a pre-scripted response

automatically sent by Fairway's system which was programmed to handle opt-out requests.

24. However, immediately following that opt-out confirmation message—within seconds—Fairway's system sent Plaintiff two additional telemarketing messages. The first read "Let's do this! Here is your link to register for GET $50:". The second message read "Tap to Load Preview," and provided a link to Fairway's website. The specific webpage contained an offer to "GET $50" for joining Fairway's "rewards program":



25. Fairway's text messages contained pre-loaded content impersonal to Plaintiff.

26. The text messages sent to Plaintiff's cellular phone by Defendant were made with an ATDS as defined by 47 U.S.C. § 227(a)(1) and the FCC. Defendant's system placed the texts automatically, using a list or database of telephone numbers and dialing without human intervention.

27. Plaintiff's cell phone number was obtained by Defendant and stored in a database containing thousands of other telephone numbers. Defendant's text-messaging system periodically accessed Plaintiff's number within the database and sent it and thousands of other consumer's telephone numbers identical pre-scripted text messages promoting Fairway's products and services.

28. No human directed any single text message to Plaintiff's number.

29. Plaintiff messaged Defendant "STOP" expecting the telemarketing messages to stop. Plaintiff received and was frustrated and annoyed by Fairway's continued messages.

30. Plaintiff's time was wasted tending to Fairway's telemarketing text messages sent after he expressly requested that they "STOP."

31. The telephone number messaged by Defendant was assigned to a cellular telephone service for which Plaintiff incurs charges for incoming messages pursuant to 47 U.S.C. § 227(b)(1).

32. Defendant did not place the text messages for an emergency purpose.

## CLASS ACTION ALLEGATIONS

A. **The Class**

33. Plaintiff brings this case as a class action pursuant to Fed. R. Civ. P. 23 on behalf of himself and all others similarly situated.

34. Plaintiff represents, and is a member of the following classes:

**Defective Consent Class:**

**All persons within the United States who, within four years of this Complaint, received on their cellular telephone at least one autodialed telemarketing message from Defendant where Defendant did not first obtain signed written consent after disclosing in a clear and conspicuous manner that (1) by executing the agreement, such person authorizes the seller to deliver or cause to be delivered to the signatory telemarketing calls using an**

**automatic telephone dialing system and (2) the person is not required to sign the agreement (directly or indirectly), or agree to enter into such an agreement as a condition of purchasing any property, goods, or services.**

**Revoke Class**

**All persons within the United States who, within four years of this Complaint, received on their cellular telephone at least one text message from Defendant, replied "STOP" to the text message and thereafter received at least one additional text message to the same cellular telephone number.**

35. Defendant and its employees or agents are excluded from the Classes. Plaintiff does not know the number of members in the Classes, but believes the class members number in the several thousands, if not more. Thus, this matter should be certified as a class action to assist in the expeditious litigation of this matter.

B. **Numerosity**

36. Upon information and belief, Defendant sent text messages to cellular telephone numbers of thousands of consumers throughout the United States without their prior express written consent or after revocation. The members of the Classes, therefore, are believed to be so numerous that joinder of all members is impracticable.

37. The exact number and identities of the Class members are unknown at this time and can only be ascertained through discovery. Identification of the Class members is a matter capable of ministerial determination from Defendant's records.

C. **Common Questions of Law and Fact**

38. There are questions of law and fact common to the Classes that predominate over any questions affecting only individual Class members. These questions include:

    a. Whether Defendant sent non-emergency text messages to Plaintiff and Class members' cellular telephones using an ATDS;

    b. Whether Defendant had prior express written consent to send its automated

       text messages;

    c. Whether Defendant's conduct was knowing and/or willful;

    d. Whether Defendant is liable for damages, and the amount of such damages; and

    e. Whether Defendant should be enjoined from such conduct in the future.

39. The common questions in this case are capable of having common answers. If Plaintiff's claim that Defendant routinely sends automated text messages to telephone numbers assigned to cellular telephone services without prior express written consent is accurate, Plaintiff and the Class members will have identical claims capable of being efficiently adjudicated and administered in this case.

**D. Typicality**

40. Plaintiff's claims are typical of the claims of the Class members, as they are all based on the same factual and legal theories.

**E. Protecting the Interests of the Class Members**

41. Plaintiff will fairly and adequately protect the interests of the Class and has retained counsel experienced in handling class actions and claims involving unlawful business practices. Neither Plaintiff nor his counsel has any interests which might cause them not to vigorously pursue this action.

**F. Proceeding Via Class Action is Superior and Advisable**

42. A class action is the superior method for the fair and efficient adjudication of this controversy. The interest of Class members in individually controlling the prosecutions of separate claims against Defendant is small because it is not economically feasible for Class members to bring individual actions.

43. Management of this class action is unlikely to present any difficulties. Several courts have certified classes in TCPA actions. These cases include, but are not limited to: *Mitchem v. Ill. Collection Serv.*, 271 F.R.D. 617 (N.D. Ill. 2011); *Sadowski v. Med1 Online, LLC*, 2008 WL 2224892 (N.D. Ill., May 27, 2008); *CE Design Ltd. V. Cy's Crabhouse North, Inc.*, 259 F.R.D. 135 (N.D. Ill. 2009); *Lo v. Oxnard European Motors, LLC*, 2012 WL 1932283 (S.D. Cal., May 29, 2012).

## COUNT I
## Violations of the Telephone Consumer Protection Act,
## 47 U.S.C. § 227, *et seq.*

44. Plaintiff repeats and realleges the above paragraphs of this Complaint and incorporates them herein by reference.

45. Defendant sent multiple automated text messages to cellular numbers belonging to Plaintiff and the other members of the Class without their prior express written consent.

46. Each of the aforementioned messages by Defendant constitutes a violation of the TCPA.

47. Plaintiff and the Class are entitled to an award of $500.00 in statutory damages for each message sent in violation of the TCPA pursuant to 47 U.S.C. § 227(b)(3)(B).

48. Additionally, Plaintiff and the Class are entitled to and seek injunctive relief prohibiting such conduct by Defendant in the future.

49. Further, Plaintiff and the Class are entitled to and seek a declaration from Defendant that:

- Defendant violated the TCPA;

- Defendant used an ATDS to send telemarketing text messages to consumers; and

- Defendant placed calls to the Plaintiff and the Class without prior express written consent.

## COUNT II
## Knowing and/or Willful Violations of the Telephone Consumer Protection Act, 47 U.S.C. § 227, *et seq.*

50. Plaintiff repeats and realleges the above paragraphs of this Complaint and incorporates them herein by reference.

51. Defendant knowingly and/or willfully sent multiple automated text messages to cellular numbers belonging to Plaintiff and the other members of the Class without their prior express written consent.

52. Each of the aforementioned messages by Defendant constitutes a knowing and/or willful violation of the TCPA.

53. As a result of Defendant's knowing and/or willful violations of the TCPA, Plaintiff and the Class are entitled to an award of treble damages up to $1,500.00 for each call in violation of the TCPA pursuant to 47 U.S.C. § 227(b)(3)(B) and 47 U.S.C. § 227(b)(3)(C).

54. Additionally, Plaintiff and the Class are entitled to and seek injunctive relief prohibiting such conduct by Defendant in the future.

55. Further, Plaintiff and the Class are entitled to and seek a declaration from Defendant that:

- Defendant knowingly and/or willfully violated the TCPA;

- Defendant knowingly and/or willfully used an ATDS to message Plaintiff and the Class;

- Defendant knowingly and/or willfully disregarded Plaintiff and the Class members' requests that the automated text messages stop;

- Defendant knowingly and/or willfully messaged Plaintiff and the Class with telemarketing text messages knowing it did not have their prior express written consent to do so;

- It is Defendant's practice and history to place automated telephone calls to consumers without their prior express consent.

## **PRAYER FOR RELIEF**

WHEREFORE, Plaintiff prays that the Court grant Plaintiff and the Class the following relief against Defendant as follows:

1. Injunctive relief prohibiting such violations of the TCPA by Defendant in the future;
2. Declaratory relief as stated;
3. Statutory damages of $500.00 for each and every call in violation of the TCPA pursuant to 47 U.S.C. § 227(b)(3)(B);
4. Treble damages of up to $1,500.00 for each and every call in violation of the TCPA pursuant to 47 U.S.C. § 227(b)(3)(C);
5. An award of attorneys' fees and costs to counsel for Plaintiff and the Class; and
6. Such other relief as the Court deems just and proper.

**TRIAL BY JURY DEMANDED ON ALL COUNTS**

Dated: April 17, 2017

Respectfully submitted,

By: */s/ Sergei Lemberg*

Sergei Lemberg, Esq.
LEMBERG LAW, LLC
43 Danbury Road
Wilton, CT 06897
Telephone: (203) 653-2250
Facsimile: (203) 653-3424
*Attorneys for Plaintiff*

## **CERTIFICATE OF SERVICE**

      I hereby certify that on April 17, 2017, a true and correct copy of the foregoing Second Amended Class Action Complaint was served electronically by the U.S. District Court for the District of Connecticut Electronic Document Filing System (ECF) and that the document is available on the ECF system.

                                                        */s/ Sergei Lemberg*
                                                        Sergei Lemberg, Esq.