**UNITED STATES DISTRICT COURT**
**DISTRICT OF CONNECTICUT**

| | |
|---|---|
| Craig Moskowitz, *on behalf of himself and all others similarly situated*, | Civil Action No.:  3:16-cv-01831-SRU |
| Plaintiff, | |
| v. | |
| Fairway Group Holdings Corp., | |
| Defendant. | |

## MEMORANDUM OF LAW IN SUPPORT OF DEFENDANT FAIRWAY GROUP HOLDINGS CORP.'S MOTION TO DISMISS THE SECOND AMENDED COMPLAINT

BY: /s/ Shawn R. Fox
Shawn R. Fox (ct420710)
McGuireWoods LLP
1345 Avenue of the Americas, 7th Fl.
New York, NY 10105
(212) 548-2165
(212) 548-2150 (fax)
sfox@mcguirewoods.com

*Counsel for Defendant Fairway Group Holdings Corp.*

Dated: May 17, 2017

# TABLE OF CONTENTS

**Page**

I. INTRODUCTION ................................................................................................ 1

II. BACKGROUND ................................................................................................ 2

    A. Fairway's Text-Messaging Program ............................................................. 2

    B. Complete Call Log Between Moskowitz and Fairway ......................................... 3

III. STANDARDS OF REVIEW ................................................................................. 4

    A. Dismissal Under Rule 12(b)(6 ...................................................................... 4

    B. Dismissal Under Rule 12(b)(1 ...................................................................... 6

IV. ARGUMENT ..................................................................................................... 7

    A. The SAC Should Be Dismissed Under Rule 12(b)(6) Because Moskowitz Fails to State a Claim Upon Which Relief May Be Granted Under the TCPA ..................................................................................................... 7

        i. Moskowitz Has Not Plausibly Alleged the Second Essential Element of a TCPA Claim – i.e., that Fairway Utilized an ATDS ............ 8

        ii. Moskowitz's Own Factual Allegations Preclude Him from Amending His Complaint Again to Allege that Fairway Stored or Produced His Number from a Random or Sequential Number Generator ........................................................................................ 11

    B. The Second Amended Complaint Should Be Dismissed Under Rule 12(b)(1) for Lack of Subject Matter Jurisdiction ............................................... 13

        i. Moskowitz Lacks Standing to Sue under Spokeo v. Robins ................... 14

        ii. Moskowitz Lacks Standing Because His Amended Complaint Does Not Allege a Concrete Injury Caused By Fairway's Alleged Use of an ATDS ............................................................................. 15

        iii. Moskowitz Lacks Standing Because His Interests Are Not Within the "Zone of Interest" Congress Intended to Protect ............................... 18

V. CONCLUSION ................................................................................................. 20

CERTIFICATE OF SERVICE ................................................................................... 22

# TABLE OF AUTHORITIES

Page(s)

**Federal Cases**

*American Rock Salt Co., LLC v. Wilson*,
Case No. 3:15-cv-01848 (MPS), 2017 WL 1243132 (D. Conn. Jan. 6, 2017)..........................5

*Ashcroft v. Iqbal*,
556 U.S. 662 (2009)............................................................................................................5, 10

*Bell Atl. Corp. v. Twombly*,
550 U.S. 544 (2007)........................................................................................................1, 5, 10

*Chambers v. Time Warner, Inc.*,
282 F.3d 147 (2d Cir. 2002)..................................................................................................5, 6

*Chem Serv., Inc. v. Envt'l Monitoring Sys. Lab.-Cincinnati*,
12 F.3d 1256 (3d Cir. 1993)......................................................................................................20

*Clarke v. Sec. Indus. Ass'n*,
479 U.S. 388 (1987)....................................................................................................................20

*Cortec Industries, Inc. v. Sum Holding L.P.*,
949 F.2d 42 (2d Cir. 1991).........................................................................................................5

*Daniels v. Community Lending, Inc.*,
No. 13CV488-WQH-JMA, 2014 WL 51275 (S.D. Cal. Jan. 6, 2014) ...................................12

*Duguid v. Facebook, Inc.*,
Case No. 15-cv-00985-JST, 2016 WL 1169365 (N.D. Cal. Mar. 24, 2016)...........8, 10, 11, 13

*Epps v. Earth Fare, Inc.*,
Case No. 2:16-cv-08221-SJO-SS, 2017 WL 1424637 (C.D. Cal. Feb. 27,
2017) ......................................................................................................................11, 12, 13

*Friedman v. Massage Envy Franchising, LLC*,
Case No. 3:12-cv-02962-L-RBB, 2013 WL 3026641 (S.D. Cal. June 13,
2013) ...................................................................................................................................10

*Fulani v. Bentsen*,
35 F.3d 49 (2d Cir. 1994) .........................................................................................................13

*Hollingsworth v. Perry*,
133 S. Ct. 2652 (2013).................................................................................................................6

*Keepers, Inc. v. City of Milford*,
807 F.3d 24 (2d Cir. 2015)...........................................................................................13

*Kokkonen v. Guardian Life Ins. Co. of Am.*,
511 U.S. 375 (1994).........................................................................................................7

*Lujan v. Defenders of Wildlife*,
504 U.S. 555 (1992)......................................................................................................7, 13

*Meyer v. Portfolio Recovery Assocs., LLC*,
707 F.3d 1036 (9th Cir. 2012) ........................................................................................8

*Montesa v. Schwartz*,
836 F.3d 176 (2d Cir. 2016)........................................................................................7, 13

*Moskowitz v. 50.com Corporation*,
Case No. 3:13-cv-00182-AWT (D. Conn. 2013).............................................................19

*Moskowitz v. American Savings Bank, F.S.B.*,
Case No. 3:17-cv-00307-AWT (D. Conn. 2017).............................................................19

*Moskowitz v. CliniLabs, Inc.*,
Case No. 1:15-cv-07838-PKC (S.D. N.Y. 2015).............................................................19

*Moskowitz v. Doctor's Associates, Inc.*,
Case No. 3:17-cv-00387-AWT (D. Conn. 2017).............................................................19

*Moskowitz v. Knight ATM Corp.*,
Case No. 1:12-cv-07373-JSR (S.D. N.Y. 2012).............................................................19

*Moskowitz v. Meta Financial Group, Inc.*,
Case No. 3:12-cv-01475-MPS (D. Conn. 2012).............................................................19

*Moskowitz v. Meta Financial Group, Inc.*,
Case No. 7:12-cv-07540-CS (S.D. N.Y. 2012)...............................................................19

*Moskowitz v. United Cash Systems, LLC*,
Case No. 3:12-cv-01375-MPS (D. Conn. 2012) (class action complaint
alleging violations of the Electronic Funds Transfer Act, 15 U.S.C. § 1963, et
seq., and Regulation E, 12 C.F.R. 205, et seq.) .............................................................19

*In the Matter of Petition for Rulemaking and Declaratory Ruling of Craig
Moskowitz and Craig Cunningham*,
CG Docket No. 05-338 (FCC Jan. 22, 2017)..................................................................19

*Raines v. Byrd*,
521 U.S. 811 (1997).........................................................................................................15

*Robins v. Spokeo, Inc.*,
    742 F.3d 409 (9th Cir. 2014) ...........................................14

*Robins v. Spokeo, Inc.*,
    No. CV10-05306 ODW, 2011 WL 597867 (C.D. Cal. Jan. 27, 2011)...................14

*Satterfield v. Simon & Schuster, Inc.*,
    569 F.3d 946 (9th Cir. 2009) ...........................................8

*Spokeo, Inc. v. Robins*,
    136 S. Ct. 1540 (2016).......................................7, 14, 15, 16

*Stoops v. Wells Fargo Bank, N.A.*,
    3:15-cv-83, 2016 U.S. Dist. LEXIS 82380 (W.D. P.A. June 24, 2016) ...........18, 20

*Susan B. Anthony List v. Driehaus*,
    134 S. Ct. 2334 (2014)......................................................7

*Tandon v. Captain's Cove Marina of Bridgeport, Inc.*,
    752 F.3d 239 (2d Cir. 2014)................................................7

*Valley Forge Christian Coll. v. Ams. United for Separation of Church and State, Inc.*,
    454 U.S. 464 (1982)........................................................7

*Weisberg v. Stripe, Inc.*,
    Case No. 16-cv-00584-JST, 2016 WL 3971296 (N.D. Cal. July 25, 2016) ...............11, 12, 13

*Zemel v. CSC Holdings LLC*,
    Case No. 16-4064-BRM-DEA, 2017 WL 1503995 (D. N.J. Apr. 26, 2017) ..............16, 17, 18

**Federal Statutes**

15 U.S.C. § 1681n(a) .........................................................14

47 U.S.C. § 227(a)(1).......................................................2, 8, 9, 10

47 U.S.C. § 227 (b)(1) .......................................................8, 17

**Rules**

Rule 12(b)(1).................................................................6, 7, 13, 20

Rule 12(b)(6).................................................................4, 5, 6, 7, 8

Rule 56......................................................................6

# I.    **INTRODUCTION**

Presently before the Court is Plaintiff Craig Moskowitz ("Moskowitz"), a serial litigant who has filed copycat actions against multiple corporate entities for violations of the Telephone Consumer Protection Act, 47 U.S.C. § 227 *et seq.* ("TCPA").  In an attempt to obtain a windfall against various corporate defendants, Moskowitz has filed *at least* three nearly identical actions in this District and the Southern District of New York against defendants for alleged violations of the TCPA.  At least two of those lawsuits are based on similarly generic claims that a defendant used an Automated Telephone Dialing System ("ATDS") in violation of the TCPA.

Here, Moskowitz has filed a two-count Second Amended Complaint ("SAC") alleging that Fairway violated the TCPA.  Specifically, Moskowitz alleges that Fairway violated the TCPA by sending unauthorized text messages to his cellular phone using an ATDS after Moskowitz revoked his prior consent to receive text messages.  As a result, Moskowitz is seeking to recover statutory damages of $500 per text message, along with treble damages, for willful and knowing violations of the TCPA, of up to $1500 per text message.

Moskowitz's SAC fails for three independent reasons.  First, Moskowitz has not plausibly alleged the elements of ATDS use by Fairway.  Rather, Moskowitz's SAC simply recites the statutory language of the TCPA, which is insufficient to withstand a motion to dismiss.  Moskowitz cannot simply assert conclusory allegations to support a claim under the standards enunciated in *Twombly.*

Second, Moskowitz's own allegations make clear that his mobile phone number was not stored or produced randomly or sequentially by Fairway.  The TCPA was enacted to protect consumers from *unsolicited* marketing and, as Moskowitz specifically alleges in his SAC, was aimed at regulating the use of ATDSs.  The statutory definition of an ATDS is clear and defines

an ATDS as a system that uses a "random or sequential number generator" to store or produce telephone numbers to be called. 47 U.S.C. § 227(a)(1). Moskowitz admits in his *own* pleadings that *he* manually submitted his telephone number into Fairway's system directly from his mobile device. This allegation directly contradicts Moskowitz's assertion that Fairway randomly or sequentially stored or produced his number. On that basis alone, Moskowitz fails to meet the most basic element of a TCPA violation, i.e., the required use of an ATDS.

Third, Moskowitz lacks Article III standing to pursue his allegations of technical violations of the TCPA because he cannot demonstrate a cognizable injury under the TCPA. Moskowitz's bare, conclusory allegations, coupled with his failure to demonstrate how or why he could have suffered the harms alleged in a 60-second timeframe and as a result of text messages he *admits* he requested, is insufficient for purposes of Article III standing. For these reasons, Moskowitz's SAC warrants dismissal, with prejudice.

## II.  **BACKGROUND**

### A.  **Fairway's Text-Messaging Program**

The TCPA regulates, among other things, the use of ATDSs. *See* SAC at ¶ 2. The statute specifically prohibits any call using an ATDS to a cellular phone without prior express consent by the person being called, absent an emergency. *Id.* at ¶ 3.

Fairway operates a chain of supermarkets in New York City and surrounding areas. *See Id.* at ¶ 5. In an effort to market its products, Fairway established a text messaging program which introduced promotions and discounts to consumers via text messages to their cellular telephones. *Id.* at ¶ 6. That program, called the "GET $50" Program, offered its customers $50 off a future purchase for enrolling. *Id.* at ¶ 18.

To enroll in the "GET $50" Program, customers had to initiate the relationship with Fairway by text messaging "50" to Fairway's short code, "70416." *Id.* Fairway would then respond to the customer by sending a link to register for the program. *Id.* ¶ 24. Upon receiving the customers' enrollment, Fairway would begin sending those customers promotions and discounts via text message. *Id.* ¶ 19. Fairway's text messages also included the instruction "Reply STOP to opt-out." *Id.* at ¶ 21.

### B. Complete Call Log Between Moskowitz and Fairway

On October 15, 2016, at 10:21 AM CST, Moskowitz initiated his relationship with Fairway and its "GET $50" Program by messaging "50" to Fairway's short code "70416." *Id.* at ¶ 18; *see also* **Exhibit A**. Fairway's reply to Moskowitz contained a 2-part message:

| |
|---|
| (1/2) "Fairway Market: You're confirmed 4 our Mobile VIP Club! All coupons one/mobile (max18msg/mo). Text STOP to end, HELP for help + T&Cs. Msg&Data rates may apply". **Exhibit A**. |
| (2/2) "Thanks for texting us. We are as excited as you are! We will send you more details on how to get $50 on Monday 10/17". **Exhibit A**. |

*See* **Exhibit A**. In part 1 of 2, Fairway immediately confirmed Moskowitz's subscription. *See* SAC at ¶ 19; *see also* **Exhibit A**. In part 2 of 2, Fairway reminded Moskowitz that he had joined two days before the "GET $50" program was set to begin. *Compare* SAC at ¶ 19 *with* **Exhibit A.**

Two days later, on October 17, 2016, Fairway announced the start of the "Get $50" eligibility period:

| |
|---|
| "Fairway Market: It's GO time! Get $50 starts today. Reply "50" in order to receive your link to sign up now. Reply STOP to opt-out." **Exhibit A**. |

The next day, on October 18, 2016, Fairway sent an additional reward for joining:

> "Fairway Market: Get $10 off when you tell us your preferred store:
> https://www.fairwaymarket.com/update-mobile/?mobile=9172708822
> Reply STOP to opt-out."
> **Exhibit A**.

On that same day, at 4:48 PM CST, Moskowitz unsubscribed from Fairway's text message program by responding "STOP." *Compare* SAC at ¶ 22 *with* **Exhibit A.** Fairway's system immediately responded with the following:

> "Fairway Market Alerts: You are opted out of all campaigns on 70416 & will receive no more msgs. Review your subscriptions: www.70416.mobi/?9172708822"
> **Exhibit A.**
>
> "Let's do this! Here is your link to register for GET $50:
> https://m.fairwaymarket.com/mforms/registrationform.aspx?sid=7c53482e-8fb9-4b0a-bd35-c3252461a4e7"
> **Exhibit A.**

*Compare* SAC at ¶ 23-24 *with* **Exhibit A.** Specifically, Fairway confirmed Moskowitz's request to opt-out of "Fairway Market Alerts." Fairway also simultaneously provided Moskowitz a personalized link to his "Get $50" reward sent on Oct. 17th (which Moskowitz previously requested by signing up), for which Moskowitz had not yet registered. Fairway honored the opt-out request and did not send Moskowitz any more text messages after October 18, 2016. *See* SAC at ¶ 24; *see also* **Exhibit A.** Notably, and consistent with the complete call logs between the parties, Moskowitz does not allege that he received any further text messages from Fairway after October 18, 2016. *Compare* SAC at ¶ 24 *with* **Exhibit A**.

## III.  STANDARDS OF REVIEW

### A.  Dismissal Under Rule 12(b)(6).

A Court should dismiss outright a complaint that fails "to state a claim upon which relief can be granted." Fed. R. Civ. P. 12(b)(6). In deciding a motion to dismiss, a court accepts all well-pleaded facts as true and views them in the light most favorable to the claimant, but not conclusory allegations or legal conclusions masked as factual conclusions. *Ashcroft v. Iqbal*, 556

U.S. 662, 678 (2009).  A complaint must offer more than an "unadorned, the-defendant-unlawfully-harmed-me accusation" to defeat a 12(b)(6) motion.  *Id*. (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (citations omitted)).  To that end, a complaint must contain sufficient factual matter, accepted as true, to "state a claim to relief that is plausible on its face." *Id*. (quoting *Twombly*, 550 U.S. at 570).  While not a "probability requirement," the plausibility standard announced in *Twombly* and *Iqbal* requires "more than a sheer possibility that a defendant has acted unlawfully."  *Id*. (quoting *Twombly*, 550 U.S. at 557).  "Where a complaint pleads facts that are 'merely consistent with' a defendant's liability, it 'stops short of the line between possibility and plausibility of entitlement to relief.'"  *Id*. (quoting *Twombly*, 550 U.S. at 557).

While a court ruling on a motion to dismiss generally may not consider documents outside of the pleadings, a complaint will be "'deemed to include any written instrument attached to it as an exhibit or any statements or documents incorporated in it by reference.'"  *American Rock Salt Co., LLC v. Wilson*, Case No. 3:15-cv-01848 (MPS), 2017 WL 1243132, at *16 (D. Conn. Jan. 6, 2017) (quoting *Chambers v. Time Warner, Inc.*, 282 F.3d 147, 152 (2d Cir. 2002)).  Further, even where "a plaintiff chooses not to attach to the complaint or incorporate by reference a prospectus upon which it ***solely relies and which is integral to the complaint***, the defendant may produce the prospectus when attacking the complaint for its failure to state a claim . . . ."  *Cortec Industries, Inc. v. Sum Holding L.P.*, 949 F.2d 42, 47 (2d Cir. 1991) (emphasis added) ("[Plaintiff] should not so easily be allowed to escape the consequences of its own failure.").  The Second Circuit's position is clear:

> [G]enerally, the harm to the plaintiff when a court considers material extraneous to a complaint is the lack of notice that the material may be considered.  Accordingly, '[w]here plaintiff has actual notice of all the information in the movant's papers[,] and has relied upon these documents in

5

framing the complaint[,] the necessity of translating a Rule 12(b)(6) motion
into one under Rule 56 is largely dissipated.'

*Chambers*, 282 F.3d at 153 (internal citations omitted). The court's analysis thus turns on

whether the complaint "relies heavily upon [the document's] terms and effect," rendering it

"integral" to the complaint. *Id.* Where these factors exist, plaintiff can suffer no prejudice from

the court's consideration of the material and a court need not convert the defendant's motion to

one for summary judgment. *See generally*, *id.*

Here, Moskowitz's SAC is largely based on allegations that Fairway sent text messages

to his cellular phone without prior express consent, in violation of the TCPA. While Moskowitz

attaches a portion of the text transcript to his Complaint, demonstrating that Fairway sent him

text messages and he replied "STOP," he fails to include the entire history of the text messages.

The additional text messages Moskowitz has in his possession and which he references in the

SAC, *see* SAC at ¶ 17-19, but failed to attach to the SAC, demonstrate that Moskowitz initiated

the entire interaction with Fairway and further demonstrates the pattern of text messages as they

were received by Moskowitz. Because these text messages are *integral to* and, in the case of the

call log, are *explicitly relied on* in the Complaint, the Court may consider them on Fairway's

Motion to Dismiss without converting it to one for summary judgment.

### B. Dismissal Under Rule 12(b)(1)

"Article III of the Constitution confines the judicial power of federal courts to deciding

actual 'Cases' or 'Controversies.'" *Hollingsworth v. Perry*, 133 S. Ct. 2652, 2661 (2013)

(quoting U.S. Const. Art. III, § 2). The "doctrine of standing" is "an essential and unchanging

part of the case-or-controversy requirement of Article III." *Lujan v. Defenders of Wildlife*, 504

U.S. 555, 560 (1992). The "irreducible constitutional minimum" for establishing standing is that

a "plaintiff must have suffered an 'injury in fact,'" by sustaining an "actual or imminent" harm

that is "concrete and particularized." *Ibid.* (quotation marks omitted); *Susan B. Anthony List v. Driehaus*, 134 S. Ct. 2334, 2341 (2014) (quoting *Lujan*, 504 U.S. at 560-61). Federal judicial powers is thus limited to only "those disputes which confine federal courts to a role consistent with a system of separated powers and which are traditionally thought to be capable of resolution through the judicial process." *Montesa v. Schwartz*, 836 F.3d 176, 195 (2d Cir. 2016) (quoting *Valley Forge Christian Coll. v. Ams. United for Separation of Church and State, Inc.*, 454 U.S. 464, 472 (1982)). A complaint should be dismissed under Federal Rule of Civil Procedure 12(b)(1) where there is a lack of any factual support for subject matter jurisdiction. *Montesa*, 836 F.3d at 195.

For motions to dismiss under Rule 12(b)(1), the moving party may submit affidavits or any other evidence properly before the court. *Tandon v. Captain's Cove Marina of Bridgeport, Inc.*, 752 F.3d 239, 243 (2d Cir. 2014). The plaintiff bears the burden of establishing subject matter jurisdiction by alleging facts that affirmatively and plausibly suggest that it has standing to sue. *Spokeo, Inc. v. Robins*, 136 S. Ct. 1540, 1547 (2016) (citing *Lujan*, 504 U.S. at 561); *Kokkonen v. Guardian Life Ins. Co. of Am.*, 511 U.S. 375, 377 (1994) ("[T]he burden of establishing the contrary rests upon the party asserting jurisdiction.").

## IV.   ARGUMENT

### A.   The SAC Should Be Dismissed Under Rule 12(b)(6) Because Moskowitz Fails to State a Claim Upon Which Relief May Be Granted Under the TCPA.

"To state a claim for a violation of the TCPA, a plaintiff must allege that: (1) the defendant called a cellular telephone number; (2) using an automatic telephone dialing system; (3) without the recipient's prior express consent." *Duguid v. Facebook, Inc.*, Case No. 15-cv-00985-JST, 2016 WL 1169365, at *4 (N.D. Cal. Mar. 24, 2016) (citing *Meyer v. Portfolio Recovery Assocs., LLC*, 707 F.3d 1036, 1043 (9th Cir. 2012); *see also* 47 U.S.C. § 227 (b)(1). A

text message is considered a call within the meaning of the TCPA. *Satterfield v. Simon & Schuster, Inc.*, 569 F.3d 946, 954 (9th Cir. 2009). ATDS is "equipment which has the capacity – (A) to store or produce telephone numbers to be called, using a random or sequential number generator; and (B) to dial such numbers." 47 U.S.C. § 227(a)(1).

Here, neither party can dispute that Fairway sent a text message to Moskowitz's cellular telephone number, *see* SAC at ¶ 24, nor can either party dispute that Moskowitz affirmatively opted-in to Fairway's text-messaging program by texting "50" to Fairway's short code, *see* SAC at ¶ 18. The key dispute for the purpose of this motion is only whether Plaintiff adequately alleged that Fairway utilized an ATDS when disseminating text messages.

      i.      ***Moskowitz Has Not Plausibly Alleged the Second Essential Element of a TCPA Claim – i.e., that Fairway Utilized an ATDS.***

Moskowitz alleges in a conclusory and formulaic manner that Fairway sent him text messages using an ATDS. These allegations fall short under Rule 12(b)(6) and require dismissal.

Specifically, beginning at ¶ 25 of the SAC, Moskowitz contends that "*Fairway's text messages contained <u>pre-loaded</u> content <u>impersonal</u> to Plaintiff.*" Notwithstanding these allegations, the text messages reflect that the messages Moskowitz received were directed to him and <u>personal</u> replies to the specific content that he requested, and that the 4th and final message he received simultaneously to unsubscribing from Fairway's text messaging program contained a <u>personal</u> URL linking him to his own unique account profile portal:

https://www.fairwaymarket.com/update-mobile/?mobile=9172708822. *See* SAC at ¶ 24.

Moreover, in the SAC at ¶ 26, Moskowitz attempts to attack the TCPA pleading requirements by declaring that "*The text messages sent to Plaintiff's cellular phone by Defendant were made with an ATDS as defined by 47 U.S.C. § 227(a)(1) and the FCC.*" (emphasis added). Notably, if Moskowitz had actually quoted Congress' statutory definition here—or anywhere else

in the SAC—the plain language of the statute ("*equipment which has the capacity to store or produce telephone numbers to be called, using a random or sequential number generator*") would highlight the deficiency of his entirely conclusory allegation.

Continuing in the SAC at ¶ 26, Moskowitz speculates that Fairway's "*system placed the texts automatically*" and "*without human intervention*" *(emphasis added)*. And finally, in the SAC at ¶ 27-28, Moskowitz states that (i) his "*cell phone number was obtained by [Fairway] and stored in a database containing thousands of other telephone numbers*", that (ii) Fairway "*accessed Plaintiff's number within the database and sent it and thousands of other consumer's telephone numbers identical pre-scripted text messages*", and that (iii) "*[n]o human directed any single text message to Plaintiff's number*" (emphasis added). These conclusory and unsupported allegations do not lead to a plausible inference that Fairway used an ATDS. Rather, and as Moskowitz's earlier allegations show, the messages were specific to Moskowitz and included his telephone number. Thus, Moskowitz fails to make any plausible allegation sufficient to meet the required pleading standards.

The call logs further reveal that Fairway "obtained" Moskowitz's mobile number directly from Moskowitz (who voluntarily provided it), and that Moskowitz received "personalized" text messages that could not have been "identical" to any other consumer. *See* **Exhibit A**. Notably, the text messages depicted in the SAC at ¶ 24 contain his telephone number, 917-270-8822, which directly undermines any allegation that the texts were "pre-scripted" and "impersonal." *See* SAC at ¶ 24. While the unsupported speculations contained in SAC ¶ 25-28 contain intriguing "buzz" words and phrases, Moskowitz fails to connect any of them to the statutory definition of ATDS while asking the reader to ignore the record and logic.

Supporting the above arguments are numerous courts which have held that similar factual allegations fail to properly state a TCPA claim, warranting dismissal of the complaint. For example, in *Friedman v. Massage Envy Franchising, LLC*, Case No. 3:12-cv-02962-L-RBB, 2013 WL 3026641, at *4 (S.D. Cal. June 13, 2013), the plaintiff included only vague allegations that the texts "were placed via an [ATDS] as defined by 47 U.S.C. § 227(a)(1)." *Id.* The court granted Massage Envy's motion to dismiss after finding that the plaintiff's allegations were "nothing more than a 'formulaic recitation of the elements of a cause of action,' and do nothing more than assert a speculation." *Id.* (citing *Twombly*, 550 U.S. at 555, 570).

Similarly, in *Duguid v. Facebook, Inc.*, the court granted the defendant's motion to dismiss a TCPA claim on grounds that the plaintiff's "conclusory allegation that Facebook used an ATDS [was] not, without more, sufficient to support a claim for relief under the TCPA." 2016 WL 1169365, at *11-12.

As was the case in *Friedman* and *Duguid*, Moskowitz has not plausibly alleged that his mobile phone number was stored or produced to be called or texted by a "random or sequential number generator." He has simply pled threadbare recitals of the ATDS element of his TCPA claims, which is insufficient to withstand a motion to dismiss. *See Iqbal*, 556 U.S. at 678 ("Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice.").

Because Moskowitz has not plausibly alleged any facts to support a claim that his mobile telephone number was stored or produced to be called or texted by a "random or sequential number generator," his TCPA claims must be dismissed. *See Weisberg v. Stripe, Inc*., Case No. 16-cv-00584-JST, 2016 WL 3971296, at *4 (N.D. Cal. July 25, 2016) (granting motion to

dismiss because "Plaintiff has not plausibly alleged that the text messages were sent randomly to him by an ATDS").

   ii. *Moskowitz's Own Factual Allegations Preclude Him from Amending His Complaint Again to Allege that Fairway Stored or Produced His Number from a Random or Sequential Number Generator.*

  The SAC suffers from an additional flaw, which cannot be repaired by further amendment - Moskowitz **admits** that he added his own mobile phone number to Fairway's database when he initiated the request to receive text messages by texting "50" to Fairway's dedicated short code. See SAC at ¶ 18.  This admission negates any plausible allegation that his telephone number was stored or produced to be called by a "random or sequential number generator."  The fact that Fairway first contacted Moskowitz in direct response to his "50" text is inconsistent with the random or sequential number generation of an ATDS.  Moskowitz's own pleading thus demonstrates that an ATDS was *not* used here.

  Courts strongly support this position and routinely dismiss complaints alleging similar allegations as insufficient to state a claim for relief under the TCPA.  *See, e.g., Epps v. Earth Fare, Inc.*, Case No. 2:16-cv-08221-SJO-SS, 2017 WL 1424637, at *6 (C.D. Cal. Feb. 27, 2017) (finding that, even if Plaintiff did effectively revoke consent, her TCPA claim nevertheless fails because "text messages sent in response to a 'voluntary release of a user's phone number' do not support a plausible inference that an ATDS was used."); *Duguid*, 2016 WL 1169365, at *5 (where a "[p]laintiff's own allegations suggest direct targeting that is inconsistent with the sort of random or sequential number generation required for an ATDS, courts conclude that the allegations are insufficient to state a claim for relief under the TCPA") (internal quotation marks omitted); *Weisberg*, 2016 WL 3971296, at *4 (text messages were sent after plaintiff "**elected**" to save his phone number on a participating website," which suggests "direct targeting that is

inconsistent with the sort of random or sequential number generation required for an ATDS" (emphasis in original)); *Daniels v. Community Lending, Inc.*, No. 13CV488-WQH-JMA, 2014 WL 51275, at *5 (S.D. Cal. Jan. 6, 2014) (dismissing complaint because the defendant's alleged calls to the plaintiffs were not random, but were instead specifically directed toward the plaintiffs).

The *Epps* court rendered the most recent on-point decision on the issue of sufficiency of pleadings alleging ATDS use. There, the plaintiff brought an action against defendant Earth Fare, Inc. for alleged violations of the TCPA. *Epps*, 2017 WL 1424637, at *1. The plaintiff consented to receiving automated commercial text messages from Earth Fare, Inc., but later attempted to revoke her consent by responding "I would appreciate [it] if we discontinue any further texts[.]" *Id.* The plaintiff alleged that, despite these attempts to revoke consent, the messages from Earth Fare, Inc. "continue unabated to this day." *Id.* Based upon these facts, the plaintiff alleged that Earth Fare, Inc. used an ATDS. *Id.*

On Earth Fare, Inc.'s motion to dismiss, the district court first found that plaintiff failed to plausibly allege that her revocation was effective, as she could have simply typed "STOP" as directed by the text messages. *Id.* at *5. The court additionally went on to state that "[e]ven if Plaintiff did effectively revoke consent," her TCPA claim nevertheless failed because she failed to plausibly plead the second element – "that Defendant used an ATDS to send Plaintiff messages." *Id.* at *6. In so finding, the court relied on two other cases which found that "text messages sent in response to a voluntary release of a user's phone number do not support a plausible inference that an ATDS was used." *Id.* (internal quotation marks omitted) (relying on *Weisberg* and *Duguid*). The court thus concluded that plaintiff's "voluntary opt-in to the text messages" was "inconsistent with her allegation that an ATDS was used." *Id.*

As was the case in *Epps*, Moskowitz's allegation that he voluntarily opted-in to Fairway's test messaging program is inconsistent with his assertions of ATDS use. Because his own pleading undermines any plausible inference that his phone number was stored or produced randomly or sequentially by Fairway using an ATDS, Moskowitz cannot maintain his claims under the TCPA. Moskowitz's SAC should thus be dismissed.

**B.** **The Second Amended Complaint Should Be Dismissed Under Rule 12(b)(1) for Lack of Subject Matter Jurisdiction.**

To satisfy the "case-or-controversy requirement" under Article III, a plaintiff must establish that he or she has standing to sue. *Keepers, Inc. v. City of Milford*, 807 F.3d 24, 38 (2d Cir. 2015) (internal quotation marks omitted). "Three elements comprise this 'irreducible constitutional minimum' of Article III standing: (1) an injury in fact, (2) a sufficient causal connection between the injury and the conduct complained of, and (3) a likel[ihood] that the injury will be redressed by a favorable decision." *Montesa*, 839 F.3d at 195 (internal citations and quotation marks omitted). "To be sufficient for purposes of standing, an injury must be 'an invasion of a legally protected interest which is (a) concrete and particularized . . . and (b) actual or imminent, not conjectural or hypothetical." *Id.* (quoting *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 560 (1992)). In determining standing, courts focus on "the party seeking to invoke federal jurisdiction, rather than the justiciability of the issue at stake in the litigation." *Id.* (quoting *Fulani v. Bentsen*, 35 F.3d 49, 51 (2d Cir. 1994)).

Moskowitz lacks Article III standing to pursue his allegations of technical violations of the TCPA because he did not suffer a cognizable concrete harm. For this reason, his claims should be dismissed.

###### i.     *Moskowitz Lacks Standing to Sue under Spokeo v. Robins.*

*Spokeo v. Robins*, 136 S. Ct. 1540 (2016), was long-anticipated and marks an important

development in the case law on Article III standing and constitutional limits on Congressional

power.  *Spokeo* involved an alleged violation of the Fair Credit Reporting Act, 15 U.S.C. § 1681

et seq. ("FCRA").  136 U.S. at 1544.  Defendant Spokeo was a "people search engine," that is, a

data aggregator that allows users to search for information on individual consumers.  *Id.*

Plaintiff Robins claimed that when a Spokeo user searched for his profile, they would receive

information "that he is married, has children, is in his 50s, has a job, is relatively affluent, and

holds a graduate degree."  *Id.* at 1546.  Plaintiff Robins alleged that all of this information was

incorrect and that Spokeo had violated various FCRA provisions by disseminating it.  *Id.* at

1545.  He sought to recover actual and statutory damages of $100 to $1,000 per violation, costs

of suit, attorney's fees and punitive damages.  *Id.*; 15 U.S.C. § 1681n(a).

The district court considered plaintiff's Article III standing to bring a FCRA claim based

on these factual allegations.  It concluded that he did not meet the first prong of the standing test

because he failed to adequately allege the existence of an injury-in-fact.  *Robins v. Spokeo, Inc.*,

No. CV10-05306 ODW (AGRx), 2011 WL 597867, at *1 (C.D. Cal. Jan. 27, 2011).  The Ninth

Circuit reversed, holding that "statutory rights created by FCRA are 'concrete, de facto injuries'

that Congress can ... elevate" to a private right of action.  *Robins v. Spokeo, Inc.*, 742 F.3d 409,

413 (9th Cir. 2014).

The Supreme Court disagreed with the Ninth Circuit and vacated and remanded its

decision.  136 S. Ct. at 1550  In so doing, the Supreme Court characterized the Ninth Circuit's

analysis as "incomplete" because it failed to address the question at issue, "namely, whether the

particular procedural violations alleged . . . entail a degree of risk sufficient to meet the

concreteness requirement" of the injury-in-fact analysis. *Id.* Thereafter, the Court confirmed that a Congressional decision to confer a private right to sue based on a procedural violation does not suffice to confer Article III standing on an individual who has not otherwise suffered a particularized and concrete injury:

> Congress' role in identifying and elevating intangible harms does not mean that a plaintiff automatically satisfies the injury-in-fact requirement whenever a statute grants a person a statutory right and purports to authorize that person to sue to vindicate that right. Article III standing requires a concrete injury even in the context of a statutory violation.

*Id.* at 1549. Thus, a plaintiff cannot "allege a bare procedural violation, divorced from any concrete harm, and satisfy the injury-in-fact requirement of Article III." *Id.*

In sum, *Spokeo* confirms that simply pleading a statutory violation, absent more, will not be enough to satisfy Article III. *See also Raines v. Byrd*, 521 U.S. 811, 820 n. 3 (1997) ("It is well settled that Congress cannot erase Article III's standing requirements by statutorily granting the right to sue to a plaintiff who would not otherwise have standing.").

**ii.** **_Moskowitz Lacks Standing Because His Amended Complaint Does Not Allege a Concrete Injury Caused By Fairway's Alleged Use of an ATDS._**

As was the case in *Spokeo* regarding the FCRA, a violation of the TCPA also gives rise to a statutory penalty without necessity of an actual injury. Applying *Spokeo*'s principles to this case, it is clear that Moskowitz has not alleged any concrete injury that is causally connected to Fairway's alleged use of an ATDS.

Illustrative of the lack of concrete injury is *Zemel*, a recent post-*Spokeo* decision from the District of New Jersey, which contains similar facts to this litigation. *See generally Zemel v. CSC Holdings LLC*, Case No. 16-4064-BRM-DEA, 2017 WL 1503995 (D. N.J. Apr. 26, 2017). In *Zemel*, the plaintiff alleged negligent and knowing/willful violations of the TCPA against the defendant following the plaintiff's receipt of three text messages from the defendant. *Id.* at *1.

The plaintiff contended that he never consented to receiving the text messages, denied any prior relationship with the defendant and alleged that the defendant used an ATDS in sending the text messages to his phone. *Id.* Of the three text messages the plaintiff received, he responded to two of them – the first of which he responded, "Help," and the second he responded, "Stop." *Id.* He thereafter received a third text message inquiring as to which messages he wished to stop. *Id.* In his class action complaint, plaintiff alleged that he suffered "actual harm, including aggravation, nuisance, and invasion of privacy that necessarily accompanies the receipt of unsolicited text messages." *Id.* He additionally asserted that the unsolicited text messages harmed him by causing him to incur telephone charges for which he previously paid. *Id.* The defendant moved to dismiss, arguing, among other things, that the plaintiff lacked Article III standing to bring a TCPA claim "because he did not suffer a cognizable concrete harm." *Id.* at *2-4.

Relying on *Spokeo*, the district court agreed with the defendant and dismissed the plaintiff's complaint. *Id.* at *4. In so doing, the court cited two reasons: (1) the plaintiff failed to plead any harm beyond a mere statutory violation; and (2) the plaintiff did not suffer the kind of harm that the TCPA was designed to prevent. *Id.* at 5. On the first point, the court noted that the plaintiff's complaint was missing allegations that he incurred additional charges due to his receipt of the text messages. *Id.* The court also pointed out that allegations of "actual harm" and "aggravation, nuisance and invasion of privacy," absent demonstrating how three text messages could have caused those harms, are nothing more than bare, conclusory assertions. *Id.* According to the court, these allegations were insufficient to surpass the concrete requirement for an injury-in-fact. *Id.* Similarly, on the second point, the court declined to infer the requisite harm under the instant circumstances, stating:

> Under these circumstances, three text messages sent throughout a short period of time and in just one day is not what Congress intended to prevent. Reading and

> responding to such text messages, and the time it required, could not have caused Plaintiff the annoyance Congress intended to prevent. Because Plaintiff has failed to allege why or how the small number of text messages caused him aggravation or nuisance, this Court cannot and will not infer such harm.

*Id.* The court thus found that the plaintiff did not sufficiently allege an injury-in-fact for the purpose of Article III standing and dismissed the complaint. *Id.*

As was the case in *Zemel*, Moskowitz has failed to plead any harm beyond a mere statutory violation and, further, does not allege the kind of harm that the TCPA was designed to prevent. Here, Moskowitz has simply alleged that he became "frustrated and annoyed" and that his "time was wasted" after receiving two simultaneous messages after texting "STOP" to Fairway's short-code. He additionally asserts that his telephone number "was assigned to a cellular telephone service for which Moskowitz incurs charges for incoming messages pursuant to 47 U.S.C. § 227(b)(1)." These allegations are nothing more than bare, conclusory assertions and mere reiterations of the statute to which he cites.

In addition, the text messages illustrated in Moskowitz's Complaint, *see* SAC at ¶ 24, further undermined that Plaintiff suffered the type of injury contemplated by Congress in enacting the TCPA. The illustration shows that Moskowitz revoked his consent to receive Fairway's text messages at 4:48 pm and received a simultaneous response which form the basis of his lawsuit within seconds – i.e., also at 4:48 pm. *Id.* Moskowitz fails to allege why or how the text message, received within seconds of his text message to Fairway, caused him the frustration, annoyance and time wasted that he alleges.

Accordingly, like *Zemel*, these circumstances do not sufficiently allege an injury-in-fact and do not warrant a finding of Article III standing for any of Moskwitz's claims. Moskowitz thus lacks standing and his SAC should be dismissed.

### iii. *Moskowitz Lacks Standing Because His Interests Are Not Within the "Zone of Interest" Congress Intended to Protect.*

Moskowitz also lacks prudential standing under Article III because his interests are not within the "zone of interests" the TCPA was designed to protect. *See*, *e.g*., *Stoops v. Wells Fargo Bank, N.A.*, 3:15-cv-83, 2016 U.S. Dist. LEXIS 82380, at *46-49 (W.D. P.A. June 24, 2016) (holding that plaintiff lacked prudential standing because manufacturing a TCPA claim not within zone of interests contemplated by Congress when enacting TCPA).

Here, the SAC demonstrates that Moskowitz sought out and consented to Fairway's mobile rewards program, and the in-store advertisements referenced by Moskowitz in the SAC only further illuminate the details of the offered mobile rewards program that Moskowitz willingly decided to join. *See* SAC ¶ 18.  Faced with such clear facts, Moskowitz resorts to challenging the validity of his digital signature while alleging that the FCC's disclosure requirements for businesses that utilize "Auto-Dialers" (or ATDSs) somehow invalidates his consent to receive the text messages at issue. *See* SAC at ¶ 7-8.  These allegations find no support in the TCPA.  The plain language of the TCPA makes clear that it was enacted to address uninvited and random encroachments on privacy without the recipient's "prior express consent."  Moskowitz's voluntary and proactive concession thus vitiates any further application of the statute or relevance with the FCC's required disclosures for robo-callers utilizing auto-dialers.

Further, Moskowitz seeks statutory damages against Fairway for these alleged violations of the TCPA.  And this would not be his first attempt against a corporate defendant.  As noted earlier, Moskowitz is a serial litigant who has filed numerous class actions in this District, including at least two nearly identical TCPA actions. *See Moskowitz v. American Savings Bank, F.S.B.*, Case No. 3:17-cv-00307-AWT (D. Conn. 2017) (TCPA class action); *Moskowitz v.*

*CliniLabs, Inc.*, Case No. 1:15-cv-07838-PKC (S.D. N.Y. 2015) (same); *Moskowitz v. 50.com Corporation*, Case No. 3:13-cv-00182-AWT (D. Conn. 2013) (same).

In addition to being a serial TCPA litigant, Moskowitz has also brought a series of other claims against various corporate defendants for alleged violations of consumer laws over the last 5 years. *See, e.g.*, *Moskowitz v. Doctor's Associates, Inc.*, Case No. 3:17-cv-00387-AWT (D. Conn. 2017) (class action alleging violations of the Magnuson-Moss Warranty Act, among other things, based upon misrepresentations in subway marketing materials); *Moskowitz v. United Cash Systems, LLC*, Case No. 3:12-cv-01375-MPS (D. Conn. 2012) (class action complaint alleging violations of the Electronic Funds Transfer Act, 15 U.S.C. § 1963, et seq., and Regulation E, 12 C.F.R. 205, et seq.); *Moskowitz v. Meta Financial Group, Inc.*, Case No. 3:12-cv-01475-MPS (D. Conn. 2012) (same); *Moskowitz v. Meta Financial Group, Inc.*, Case No. 7:12-cv-07540-CS (S.D. N.Y. 2012) (same); *Moskowitz v. Knight ATM Corp.*, Case No. 1:12-cv-07373-JSR (S.D. N.Y. 2012). He also recently filed a petition with the FCC requesting various changes to an earlier interpretation regarding "prior express consent" under the TCPA. *See In the Matter of Petition for Rulemaking and Declaratory Ruling of Craig Moskowitz and Craig Cunningham*, CG Docket No. 05-338 (FCC Jan. 22, 2017). That filing alludes to additional TCPA lawsuits Moskowitz may file against other corporate defendants.

It is clear that Moskowitz is a sophisticated party—certainly well versed enough on how to both "opt-in" and "opt-out" of mobile loyalty and rewards programs to completely insulate himself from any "concrete" harm or injury. Indeed, Moskowitz's litigation history leaves little doubt that his claims against Fairway are "manufactured" and seek to abuse the TCPA statute in a way not intended or contemplated by Congress. Accordingly, his interests fall well outside the scope of interests the TCPA was enacted to protect.

In sum, Moskowitz cannot demonstrate that he has suffered a cognizable injury or falls within the zone of interests contemplated by the enactment of the TCPA.  His claims "are so marginally related to or inconsistent with the purposes implicit in the [TCPA] that it cannot reasonably be assumed that Congress intended to permit the suit."  *Stoops*, 2016 U.S. Dist. LEXIS 82380, at *47 (quoting *Chem Serv., Inc. v. Envt'l Monitoring Sys. Lab.-Cincinnati*, 12 F.3d 1256, 1262 (3d Cir. 1993) and *Clarke v. Sec. Indus. Ass'n*, 479 U.S. 388, 399 (1987)).  For all of the reasons set forth above, Moskowitz lacks Article III standing and the Amended Complaint should be dismissed for lack of subject matter jurisdiction pursuant to Rule 12(b)(1).

## V.  <u>CONCLUSION</u>

Moskowitz fails to plausibly allege the essential element required to state a claim under the TCPA, specifically that Fairway utilized an ATDS.  Further, Moskowitz lacks Article III standing because he has suffered no cognizable injury and his interests do not fall within the zone of interests protected by the TCPA.  Because Moskowitz has already taken the opportunity to amend his original allegations on two occasions, and because he would have to contradict his own admitted facts to cure the numerous deficiencies in the SAC, Defendant Fairway Group Holdings Corp. respectfully requests that the Court dismiss, with prejudice, Plaintiff's Second Amended Complaint for failure to state a claim upon which relief may be granted and for lack of standing.

**FAIRWAY GROUP HOLDINGS CORP.**

**By its attorneys,**

BY: /s/ Shawn R. Fox
      Shawn R. Fox (ct420710)
      McGuireWoods LLP
      1345 Avenue of the Americas, 7th Fl.
      New York, NY 10105
      (212) 548-2165
      (212) 548-2150 (fax)
      sfox@mcguirewoods.com

Dated: May 17, 2017

## CERTIFICATE OF SERVICE

I hereby certify that on May 17, 2017, a copy of the foregoing was filed electronically and served by mail on anyone unable to accept electronic filing.  Notice of this filing will be sent by e-mail to all parties by operation of the Court's electronic filing system or by mail to anyone unable to accept electronic filing as indicated on the Notice of Electronic Filing.  Parties may access this filing through the Court's CM/ECF System.

<div style="margin-left: 40%;">

BY: /s/ Shawn R. Fox

Shawn R. Fox (ct420710)
McGuireWoods LLP
1345 Avenue of the Americas, 7th Fl.
New York, NY 10105
(212) 548-2165
(212) 548-2150 (fax)
sfox@mcguirewoods.com

</div>