**UNITED STATES DISTRICT COURT**
**DISTRICT OF CONNECTICUT**

| | |
|---|---|
| Craig Moskowitz, *on behalf of himself and all others similarly situated*, <br><br> Plaintiff, <br><br> v. <br><br> Fairway Group Holdings Corp., <br><br> Defendant. | Civil Action No.: 3:16-cv-01831-SRU |

**FAIRWAY GROUP HOLDINGS CORP.'S REPLY MEMORANDUM IN FURTHER SUPPORT OF ITS MOTION TO DISMISS THE SECOND AMENDED COMPLAINT**

Defendant Fairway Group Holdings Corp. ("Fairway") hereby submits this reply memorandum in further support of its Motion to Dismiss the Second Amended Complaint. In support, Fairway states as follows:

## I.     INTRODUCTION

Plaintiff Craig Moskowitz's ("Moskowitz") Second Amended Complaint ("Compl." or "Complaint") is based upon his receipt of four text messages from Fairway following an opt-in request submitted ***by him from his mobile telephone number***. Those text messages include: (1) an opt-in confirmation text message, which arrived in two parts, (2) a $50 reward offer; (3) a $10 reward offer; and (4) an opt-out confirmation text message, which also arrived in two parts. Despite *requesting* to join Fairway's text messaging program, and receiving exactly what he requested, Moskowitz claims that each of the text messages he received from Fairway violate the Telephone Consumer Protection Act ("TCPA"), 47 U.S.C. § 227.

In response, Fairway filed a motion to dismiss the Complaint. Fairway argued that the Complaint fails to state a cause of action under the TCPA because Moskowitz fails to allege facts

that establish Fairway sent text messages to his mobile telephone number using an Automated Telephone Dialing System ("ATDS"). Fairway also argued that the Complaint fails for lack of subject matter jurisdiction because Moskowitz fails to allege a concrete injury and because he sought out and consented to participate in Fairway's mobile rewards program, rendering him outside of the "zone of interests" the TCPA was designed to protect.

As set out more fully below, Moskowitz has responded to Fairway's motion to dismiss and, in an effort to support his claims, has relied upon an inaccurate interpretation of applicable law. Moskowitz has also ignored his own allegations, which bar any claim for relief. Moskowitz has not, and cannot, establish TCPA liability against Fairway, nor can he identify a cognizable injury under the TCPA on the facts he alleged. Therefore, his claims must be dismissed, with prejudice.

## II.     TIMELINE OF ALLEGED FACTS AND ADMISSIONS

Moskowitz's Complaint acknowledges, and in fact *alleges*, that Fairway established a "***text messaging program which introduced promotions and discounts to consumers***" via text message to their mobile phones. (Compl. at ¶ 6). He then *admits* that he opted in to this program by texting "50" from his mobile phone to Fairway's short code. (Compl. at ¶ 18). In response, Moskowitz received the following message from Fairway, which arrived in two parts at 11:21 am (CST):

| |
|---|
| **(1/2) Fairway Market: You're confirmed 4 our Mobile VIP Club! All coupons one/mobile (max18msg/mo). Text STOP to end, HELP for help + T&Cs. Msg&Data rates may apply** |
| **(2/2) Thanks for texting us. We are as excited as you are! We will send you more details on how to get $50 on Monday 10/17.** |

(Dkt. No. 19-2).[1]  This "Opt-in Confirmation" message clearly identifies what Moskowitz has enrolled in and what he would receive thereafter – i.e., Fairway's Mobile VIP Club, coupons and

---

[1] Neither party disputes the accuracy of the call log. Indeed, Moskowitz claims that it "corroborates" his allegations and relies on it in his responsive pleading. (Dkt. No. 23 at 4, n.2).

more information regarding a $50 reward offer.  *Id.*  After receiving these texts, he neither texted "STOP" nor "HELP," despite the option to do so.  (*See generally* Compl.).

Then, consistent with the very program he opted into, and to which he neither replied "STOP" nor "HELP," Moskowitz received a text message regarding the "Get $50" offer on October 17, 2016 and another regarding a $10 reward offer on October 18, 2016:

> **Fairway Market: It's GO time! Get $50 starts today. Reply "50" in order to receive your link to sign up now.  Reply STOP to opt-out.**

> **Fairway Market: Get $10 off when you tell us your preferred store: https://www.fairwaymarket.com/update-mobile/?mobile=9172708822 Reply STOP to opt-out.**

(Dkt. No. 19-2).  *After* this point he replied "STOP."  (Compl. at ¶¶ 23-24).  Moskowitz thereafter received an "Optout Confirmation" message, which arrived in two parts at 3:48 pm (CST):

> **(1/2) Fairway Market Alerts: You are opted out of all campaigns on 70416 & will receive no more msgs. Review your subscriptions: www.70416.mobi/?9172708822**
> **(2/2) Let's do this! Here is your link to register for GET $50: https://m.fairwaymarket.com/mforms/registrationform.aspx?sid=7c53482e-8fb9-4b0a-bd35-c3252461a4e7**

(Dkt. No. 19-2).  Moskowitz did not receive, and he does not allege having received, any text messages after receiving this "Optout Confirmation" message.  (*See* Compl. at ¶¶ 23-24).

## III.     ARGUMENT

In response to Fairway's motion, Moskowitz asserts that Fairway's argument regarding ATDS use is based upon an overly narrow reading of TCPA statutory language and a mischaracterization of his allegations.  He also asserts that he has constitutional standing and recites the "injuries" he allegedly sustained as a result of receiving the text messages he requested. Finally, Moskowitz claims that *none* of the messages he received were lawful, because Fairway failed to obtain his prior express written consent.  According to Moskowitz, at best, his initial,

affirmative message to Fairway's short code would only constitute consent to receive "a single text" at his phone number. As set out more fully below, each of the above arguments fails.

a.      **Moskowitz's allegations are inconsistent with ATDS use.**

Moskowitz discusses at length various Federal Communications Commission rulings on the issue of what constitutes an ATDS under the TCPA and cites to ample authority on the issue. However, in doing so, he ignores a significant and distinguishing fact in this case – *he provided his number to Fairway*.

As this Court is aware, ATDS is defined by statute as equipment having the capacity to store or produce telephone numbers to be called, using a random or sequential number generator, and to dial such numbers. 47 U.S.C.A. § 227. Here, Moskowitz's allegations refute any possibility that Fairway sent the relevant messages using an ATDS. The Complaint alleges that he *first* provided Fairway with his number and *then* Fairway used a machine to send him messages. (Compl. at ¶¶ 18-19). It follows that Moskowitz's number could not have been "randomly" generated by a machine if *he* provided it to Fairway. Moskowitz's number also could not have been sequentially dialed if Fairway's responses to his text messages were "immediate," as he alleges. (*Id.* at ¶¶ 23-24 (alleging that Fairway "immediately responded")).

In an effort to get away from his own allegations, Moskowitz argues that the capacity to produce phone numbers randomly or sequentially is not necessary, so long as the system stores, then dials numbers, without human intervention. But this position ignores the clear definition of ATDS, as outlined above. Further, when faced with *similar allegations to those alleged by Moskowitz*, courts have routinely dismissed those claims as inconsistent with ATDS use. *See, e.g., Epps v. Earth Fare, Inc.*, No. 2:16-cv-08221-SJO-SS, 2017 WL 1424637, at \*6 (C.D. Cal. Feb. 27, 2017) ("Plaintiff's **voluntary opt-in to the text messages** is inconsistent with her allegation that

4

an ATDS was used." (emphasis added)); *Duguid v. Facebook, Inc.*, No. 15-cv-00985-JST, 2016 WL 1169365, at *5 (N.D. Cal. Mar. 24, 2016) (because Facebook **users add their numbers for the purpose of receiving login notifications by text messages,** text messages are "targeted to specific phone numbers and are triggered by attempts to log in to Facebook accounts associated with those phone numbers" (emphasis added)); *Weisberg v. Stripe, Inc.*, No. 16-cv-00584-JST, 2016 WL 3971296, at *3 (N.D. Cal. July 25, 2016) (text messages were sent after **plaintiff "elected to save his phone number on a participating website**," which suggests "direct targeting that is inconsistent with the sort of random or sequential number generation required for an ATDS" (emphasis added)); *Ibey*, 2012 WL 2401972, at *3 (dismissal because plaintiff consented to contact from defendant when he texted the defendant's short code, but also noting on the ATDS issue that, "[a]ccording to Plaintiff's allegations, **the text messages [from defendant] did not appear to be random but in direct response to Plaintiff's message**").

Despite this consensus in authority, Moskowitz directs the Court's attention to a host of irrelevant case law wherein courts have held defendants liable for what he claims are "text messages like those at issue here." But none of the cases he cites involves a plaintiff *providing his own phone number* for the purpose of being called or texted, *receiving* the text messages *in response to his request*, and then claiming that text messages he received were unlawful, as is the case here.[2] These facts cannot support a claim of ATDS use or a TCPA claim.

---

[2] *See e.g., Holt v. Facebook, Inc.*, No. 16-CV-02266-JST, 2017 WL 1100564, at *1 (N.D. Cal. Mar. 9, 2017) (plaintiff did not use Facebook, did not provide number to Facebook and did not authorized Facebook to contact her, yet she received messages); *Brickman v. Facebook, Inc.*, No. 16-CV-00751-TEH, 2017 WL 386238, at *1 (N.D. Cal. Jan. 27, 2017), *cert. of appeal. granted*, No. 16-CV-00751-TEH, 2017 WL 1508719 (N.D. Cal. Apr. 27, 2017) (plaintiff supplied number to defendant, but indicated that he *did not* want to receive messages and *did not* activate messaging for cell phone); *Izsak v. Draftkings, Inc.*, 191 F. Supp. 3d 900, 902 (N.D. Ill. 2016) (defendant sent unsolicited text to plaintiff's cell phone); *Olmos v. Bank of Am., N.A.*, No. 15-CV-2786-BAS-BGS, 2016 WL 3092194, at *1 (S.D. Cal. June 1, 2016) (customer got a new number and never provided

**b.** **Moskowitz invited and consented to receiving Fairway's text messages.**

Moskowitz also contends that Fairway does not argue that the Complaint should be dismissed because Fairway had Plaintiff's prior express written consent to send the text messages at issue. He does acknowledge, however, that Fairway's motion to dismiss, including an entire argument based upon standing, is premised upon the fact that Moskowitz *consented* to receive the messages in question. To be clear, Fairway's position is that Moskowitz has already alleged that he **requested**, and thus **consented** to receiving, the very messages of which he now complains. *Ibey*, 2012 WL 2401972, at *3 (S.D. Cal. 2012) ("Plaintiff expressly consented to contact by Defendant when he initially texted 91318 to Defendant."). To the extent Moskowitz intends to maintain this argument, as his brief suggest, that argument fails as well.

On that issue, Moskowitz argues that a consumer's text message in response to a marketing campaign permits only a single text to the consumer's phone number. Thus, at best, his message to Fairway's short code only constituted consent for a "one-time message" and "independent prior

---

it to Bank, yet still received texts on new phone); *Echevvaria v. Diversified Consultants, Inc.*, No. 13 Civ. 4980, 2014 WL 929275, at *8 (S.D. N.Y. Feb. 28, 2014) (plaintiff's number obtained through "skip-trace" – a process whereby "skip tracers" use various devices to identify a person's whereabouts or contact information and then "pass this information back to the collection agencies"); *Morse v. Allied Interstate, LLC*, 65 F. Supp. 3d 407, 409 (M.D. Pa. 2014) (technical system used to automatically load files into a dialer and calls were placed to account-holders, admittedly without human intervention, from client files); *Moore v. Dish Network L.L.C.*, 57 F. Supp. 3d 639, 642 (N.D.W. Va. 2014) (plaintiff was never a customer of defendant and had informed defendant that it was calling the wrong number and requested that the calls stop); *Davis v. Diversified Consultants, Inc.*, 36 F. Supp. 3d 217, 224 n.9 (D. Mass. 2014) (plaintiff's number obtained through "skip-trace"); *In re Jiffy Lube Int'l, Inc., Text Spam Litig.*, 847 F. Supp. 2d 1253, 1259 (S.D. Cal. 2012) (defendant argued that *some* of the plaintiffs provided their numbers on invoices after receiving services, but these facts *were not* alleged in the complaint and the court declined to review them at motion to dismiss stage); *Kramer v. Autobytel, Inc.*, 759 F. Supp. 2d 1165, 1167 (N.D. Cal. 2010) (defendant acquired numbers from third-party and sent spam advertisements); *Abbas v. Selling Source, LLC*, No. 09 CV 3413, 2009 WL 4884471, at *1 (N.D. Ill. Dec. 14, 2009) (plaintiff did not provide his number to defendant, but received numerous messages).

express written consent" was required before any additional messages could be sent to him. The Seventh Circuit recently addressed and disagreed with this position.

In *Blow v. Bijora, Inc.*, 855 F.3d 793 (7th Cir. 2017), a plaintiff brought a class-action lawsuit against a retailer, alleging that the retailer violated, among other things, the TCPA when it sent approximately sixty promotional messages to the plaintiff's phone. *Id.* at 796. The retailer prevailed on summary judgment because the plaintiff failed to demonstrate ATDS use. *Id.* The Seventh Circuit affirmed the district court's judgment, but instead of focusing on ATDS use, the Court focused on the separate issue of prior express consent. *Id.* at 802-05.

The Court held that the plaintiff provided "prior express consent" under the TCPA. *Id.* In so holding, the Court noted that ***she provided her number in response to an offer for "exclusive information or special offers."*** *Id.* at 803. According to the Court, "an effective consent is one that relates to the same subject matter as is covered by the challenged calls or text messages." *Id.* at 804 (relying on *Van Patten v. Vertical Fitness Group, LLC*, 847 F.3d 1037, 1044-46 (9th Cir. 2017) (". . . the transactional context matters in determining the scope of a consumer's consent to contact.") and *Murphy v. DCI Biologicals Orlando, LLC*, 797 F.3d 1302, 1304 (11th Cir. 2015) (express consent found where plaintiff provided number on new blood donor sheet, which neither requested a phone number nor indicated that it was a prerequisite to donating)). Thus, "if the contact is related to the reason the number was provided, consent is valid." *Id.*

Against this backdrop, the Court noted that the plaintiff received a welcome text, promotional and discount offers, and special events announcements. *Id.* Each of these messages "fit comfortably within the aforementioned exclusive information described on the cards." *Id.* (internal quotation marks omitted). Further, the Court noted that, despite the option to reply "STOP" to the messages, the plaintiff never did so. *Id.* at 803-04. Because the text messages the

plaintiff received were reasonably related to the purpose for which she provided her cell phone number, and she never revoked her consent, the Court agreed with the retailer that the plaintiff provided prior express consent for the text messages. *Id.* at 804-05.

The same rationale from *Blow* is applicable here. In the Complaint, Moskowitz acknowledges, and indeed alleges, that Fairway established a "***text messaging program which introduced promotions and discounts to consumers***" via text message to their cellular telephones. (Compl. at ¶ 6). He then alleges that he requested to be a part of Fairway's text messaging program by texting "50" to Fairway's short code. (*Id.* at ¶ 18). The "Opt-in Confirmation" message he thereafter received clearly identifies what he enrolled in and what he would receive – i.e., Fairway's Mobile VIP Club, coupons and details on a $50 reward program. (Dkt. No. 19-2). Despite an invitation to do so, Moskowitz neither texted "STOP" nor "HELP." (*Id.*).

Then, consistent with ***the very program Moskowitz opted into***, and to which he neither replied "STOP" nor "HELP," Moskowitz received one message regarding the start of the $50 reward program and, later, another one regarding a $10 reward offer. (*Id.*). It was not until *after* this point that Moskowitz replied "STOP." (*Id.*). Moskowitz received an opt-out confirmation message and did not receive any messages from Fairway thereafter. (*Id.*).

As demonstrated above, and as was the case in *Blow*, each of the texts Moskowitz received prior to his opt-out request directly related to the reason he provided his phone number to Fairway – i.e., ***to obtain promotions and discounts***. Despite alleging that he affirmatively opted in to Fairway's text messaging program to receive the promotions and discounts, receiving the messages regarding promotions and discounts, and failing to text "STOP" or "HELP" as invited, Moskowitz alleges that he neither invited nor consented to the messages. Under *Blow*, however, Moskowitz's consent was valid. 855 F.3d at 804 ("[E]ffective consent is one that relates to the same subject

matter as is covered by the challenged calls or text messages.").

Consistent with his litigious background, Moskowitz seeks a loop hole wherein he can knowingly and willingly solicit text messages from a retailer and thereafter claim that his receipt of what he requested is unlawful. This argument defies logic and should be rejected as contrary to the purpose of the TCPA. The Complaint should be dismissed.

        **c.**       **The Complaint Fails for Lack of Subject Matter Jurisdiction.**

Finally, Moskowitz argues that he has constitutional standing pursuant to overwhelming authority because: (1) a violation of the TCPA, alone, is sufficient to confer standing; and (2) he has alleged additional harms in his Complaint, which separately confer standing. Indeed, he cites to a multitude of cases in a footnote of parentheticals spanning three pages in support of this argument. Moskowitz again misses the mark. The overriding theme of his argument is that he has *alleged* that he received unwanted and unauthorized text messages prohibited by the TCPA. Yet again, his own allegations refute this position.

As the call log demonstrates, Moskowitz received a total of **four** text messages from Fairway: (1) an opt-in confirmation message, which arrived in two parts, (2) a message pertaining to Fairway's Get $50 offer; (3) a message regarding a $10 reward offer; and (4) an opt-out confirmation message following his "STOP" request, which also arrived in two parts. (*See* Dkt. No. 19-2). Moskowitz *requested* each of these messages. Absent *his* request, he would not have received the opt-in confirmation message. (*See Id.*; *see also* Compl. at ¶ 18). He could have replied "STOP" or "HELP" prior to receiving both the second and third text messages, but failed to do so. (*See* Dkt. No. 19-2). *After* receiving the third message, pursuant to his enrollment in Fairway's text messaging program, he replied "STOP." (*See Id.*; *see also* Compl. at ¶ 22). Immediately thereafter, and consistent with this request, Fairway sent an opt-out confirmation

message, which arrived in two parts. (*See* Dkt. No. 19-2). Fairway did not send any additional

messages to him following the opt-out confirmation message. (*Id.*).[3]

Put simply, Moskowitz has not demonstrated the existence of "unwanted" and/or

"unauthorized" text messages from Fairway. There can be no "injury" for purposes of conferring

standing where there is no violation. Moskowitz has thus failed to allege a cognizable injury which

is causally connected to Fairway's alleged violations of the TCPA.

## IV.    CONCLUSION

To recap, Moskowitz *admits* that he requested the very text messages he received, and

*admits* that Fairway stopped texting him when he replied "STOP," yet requests that this Court defy

logic to conclude that the texts at issue violate the TCPA because Fairway: (1) allegedly used an

ATDS when sending text messages *he requested*; and (2) failed to obtain prior express written

consent from him before sending the messages *he requested*. Further, while admitting the accuracy

of, and in fact relying on, the call log attached to Fairway's motion to dismiss, Moskowitz asks

this Court to ignore its common sense to conclude that the "opt-out" message he received

constitutes three separate messages. Moskowitz's interpretation of applicable law is incorrect and

his own allegations bar any claim for relief. He has not, and cannot, establish TCPA liability

against Fairway, nor can he identify a cognizable injury under the TCPA.

For each of the above-stated reasons, and those set out in Fairway's opening motion,

Defendant Fairway Group Holdings Corp. respectfully requests that this Court grant its Motion to

Dismiss the Second Amended Complaint, with prejudice, and grant any such other relief as the

---

[3] According to Moskowitz, *two* messages followed his opt-out confirmation message. But the call log demonstrates that Fairway only sent a **one** confirmation message at 3:48 pm (CST). It just arrived on his phone in a different format. (*Compare* Dkt. No. 19-2 *with* Compl. at ¶ 24). The manner in which the messages arrived does not change the fact that Fairway only sent **one** confirmation message. (*See* Compl. at ¶ 24 (texts arrived "immediately")).

Court may deem just and proper.

Respectfully submitted,

**FAIRWAY GROUP HOLDINGS CORP.**

**By its attorneys,**

BY: /s/ Shawn R. Fox
    Shawn R. Fox (ct420710)
    McGuireWoods LLP
    1345 Avenue of the Americas, 7th Fl.
    New York, NY 10105
    (212) 548-2165
    (212) 548-2150 (fax)
    sfox@mcguirewoods.com

Dated: July 19, 2017

## CERTIFICATE OF SERVICE

I hereby certify that on July 19, 2017, a copy of the foregoing was filed electronically and served by mail on anyone unable to accept electronic filing.  Notice of this filing will be sent by e-mail to all parties by operation of the Court's electronic filing system or by mail to anyone unable to accept electronic filing as indicated on the Notice of Electronic Filing.  Parties may access this filing through the Court's CM/ECF System.

BY: /s/ Shawn R. Fox
     Shawn R. Fox (ct420710)
     McGuireWoods LLP
     1345 Avenue of the Americas, 7th Fl.
     New York, NY 10105
     (212) 548-2165
     (212) 548-2150 (fax)
     sfox@mcguirewoods.com