**UNITED STATES DISTRICT COURT**
**DISTRICT OF CONNECTICUT**

|  |  |
|---|---|
| Craig Moskowitz, *on behalf of himself and all others similarly situated*, | : |
| | : Civil Action No.:  3:16-cv-01831-SRU |
| | : |
| Plaintiff, | : |
| | : **THIRD AMENDED CLASS ACTION** |
| v. | : **COMPLAINT** |
| | : **JURY TRIAL DEMANDED** |
| Fairway Group Holdings Corp., | : |
| | : |
| Defendant. | : |

For this Third Amended Class Action Complaint, the Plaintiff, Craig Moskowitz, by and through his undersigned counsel, pleading on his own behalf and on behalf of others similarly situated, states as follows:

# <u>INTRODUCTION</u>

1.     Plaintiff, Craig Moskowitz ("Plaintiff"), brings this class action for damages, injunctive relief, and declaratory relief from the illegal actions of Defendant Fairway Group Holdings Corp. ("Defendant" or "Fairway"). Defendant sent unauthorized automated text messages to Plaintiff's cellular phone in violation of the Telephone Consumer Protection Act (the "TCPA"), 47 U.S.C. § 227(b)(1)(A).

2.     The TCPA regulates, among other things, the use of automated telephone dialing systems ("ATDS").

3.     Specifically, 47 U.S.C. § 227(1)(A)(iii) prohibits any call using an ATDS to a cellular phone without prior express consent by the person being called, unless the call is for emergency purposes.

4.      Wireless spam is a growing problem in the United States.  In April 2012, the Pew

Research Center found that 69% of texters reported receiving unwanted spam text messages,

while 25% reported receiving spam texts weekly.  http://www.pewinternet.org/fact-

sheets/mobile-technology-fact-sheet/ (last visited June 4, 2015); *see also* Nicole Perlroth, Spam

Invades a Last Refuge, the Cellphone, N.Y.Times, April 8, 2012, at A1 ("In the United States,

consumers received roughly 4.5 billion spam texts [in 2011], more than double the 2.2 billion

received in 2009 . . . .").

5.      Fairway operates a chain of supermarkets in New York City and surrounding

areas.

6.      In an effort to market its products, Fairway established an automated text

messaging program which introduced promotions and discounts to consumers via automated text

messages to their cellular telephones.  The program violated the TCPA in two ways.

7.      First, Fairway did not obtain signed prior express written consent from consumers

before enrolling them in the automated text program. The FCC has mandated that for

telemarketing messages, auto-dialers must have prior express *written* consent, meaning:

> [A]n agreement, in writing, bearing the signature of the person called that clearly
> authorizes the seller to deliver or cause to be delivered to the person called
> advertisements or telemarketing messages using an automatic telephone dialing
> system or an artificial or prerecorded voice, and the telephone number to which
> the signatory authorizes such advertisements or telemarketing messages to be
> delivered.
>
> > (i) The written agreement shall include a clear and conspicuous disclosure
> > informing the person signing that:
> >
> > (A) By executing the agreement, such person authorizes the seller to
> > deliver or cause to be delivered to the signatory telemarketing calls using
> > an automatic telephone dialing system or an artificial or prerecorded
> > voice; and
> >
> > (B) The person is not required to sign the agreement (directly or

indirectly), or agree to enter into such an agreement as a condition of purchasing any property, goods, or services.

(ii) The term "signature" shall include an electronic or digital form of signature, to the extent that such form of signature is recognized as a valid signature under applicable federal law or state contract law.

47 C.F.R. § 64.1200(f)(8).

8. Before enrolling Plaintiff and class members in its telemarketing program, Fairway did not (1) provide the disclosures required by § 64.1200(f)(8) and (2) did not seek nor obtain a signed agreement permitting automated text messages.

9. Fairway's automated text messages violated the TCPA also because they ignored cease messaging directives. Fairway's automated text messages stated that consumers could respond "STOP" to stop or opt out of its text messages. However, Fairway programmed its text-messaging system to blatantly disregard consumers 'STOP' requests.

10. When consumers responded STOP, Fairway did not stop. Instead, Fairway would acknowledge the consumer's opt-out request, then send additional telemarketing text messages. Fairway knew these consumers no longer wished to receive their messages but sent them anyway.

11. Fairway's disregard for consumers' opt-out request constitutes a willful and knowing violation of the TCPA.

12. Plaintiff is one such consumer, and sues Fairway for its TCPA violations individually and on behalf of all others similarly situated.

## JURISDICTION AND VENUE

13. This Court has original jurisdiction over this matter pursuant to 28 U.S.C. § 1331. *Mims v. Arrow Fin. Serv., LLC*, 132 S. Ct. 740, 751-53 (2012).

14. Venue is proper in this District pursuant to 28 U.S.C. § 1391, because Plaintiff

resides in this District and because a substantial part of the events giving rise to the claim occurred in this District.

<center>**PARTIES**</center>

15.     Plaintiff is, and at all times mentioned herein was, an adult individual residing in Stamford, Connecticut.

16.     Defendant Fairway Group Holdings Corp. is a Delaware corporation headquartered at 2284 12th Avenue, New York, New York 10027.

<center>**ALLEGATIONS APPLICABLE TO PLAINTIFF**</center>

**A.  The Messages**

17.     Fairway invited consumers to join its automated text messaging program via the following 'call-to-action' marketing materials:





## FAIRWAY FAVORITES

**WHAT JOHNNY BUYS WITH $50 AT FAIRWAY**
- Fairway Smoked Salmon
  Nothing can beat hand-sliced and cold smoked!
- Chevre Noir / Humboldt Fog & Saint Andre Cheeses
  Unique artisan cheeses with bold flavor
- Fairway Pesto Sauce
  Best fresh pesto in town
- Brooklyn Bread Ancient Grain Pizza Crust
  My go-to pizza crust

**IT'S EASY. DON'T MISS OUT!**

TEXT "50" TO 70416

## FAIRWAY FAVORITES

**WHAT JUAN BUYS WITH $50 AT FAIRWAY**
- USDA Prime Rib Roast
  Juicy, tender - my mouth is watering
- Beef Chateaubriand
  Hand trimmed and oh so delicious
- Fairway Organic Turkey
  My family's go-to fresh Thanksgiving bird
- Frenched Lamb Racks
  Our favorite fancy meal at home

**IT'S EASY. DON'T MISS OUT!**

TEXT "50" TO 70416

## FAIRWAY FAVORITES

**WHAT DAVE BUYS WITH $50 AT FAIRWAY**
- Aged "Butcher Trimmed" Bone-in Ribeye
  Only the best for date night with my wife
- Fairway Coffee
  Fresh roasted beans are the best
- Fairway Baguettes
  It rarely makes it all the way home
- Fairway Extra Virgin Olive Oils
  Imported direct from Italy

**IT'S EASY. DON'T MISS OUT!**

TEXT "50" TO 70416

## FAIRWAY FAVORITES

**WHAT RAY BUYS WITH $50 AT FAIRWAY**
- Fairway Rare Roast Beef
  You've never had roast beef this good
- Brioche Sliced Loaf
  It makes the best grilled cheese
- Organic Valley Epicurean Butter
  If we run out, my wife gets mad
- Holiday Seedless Grapes
  I wait for them every year
- Fairways Crantastic Chicken Salad
  It needs nothing else. Eat it right out of the container

**IT'S EASY. DON'T MISS OUT!**

TEXT "50" TO 70416

## FAIRWAY FAVORITES

**WHAT ROSA BUYS WITH $50 AT FAIRWAY**
- Organic Butternut Squash
  My fall food
- Kite Hill Almond Milk Cream Cheese
  It's the best non-dairy cream cheese you can find
- Fairway Organic Maple Syrup
  So good, I could drink it!
- Sambazon Acai blended with Organic Bananas
  and Califia Almond Milk
  My daily breakfast, so I can take on the world

**IT'S EASY. DON'T MISS OUT!**

TEXT "50" TO 70416

## FAIRWAY FAVORITES

**WHAT JACKIE BUYS WITH $50 AT FAIRWAY**
- Fairway Organic Extra Virgin Olive Oil
  I only use Italian Olive Oil
- Fairway Grassfed Organic Milk
  Best milk I've ever had
- Imported Ventgri Pasta
  Best pasta from here to Italy
- Fairway Mini Bagels
  Perfect size snack for smaller people (kids' lunch)
- Fairway Supreme Brie
  Best brie ever

**IT'S EASY. DON'T MISS OUT!**

TEXT "50" TO 70416

## FAIRWAY FAVORITES

**WHAT RICHARD BUYS WITH $50 AT FAIRWAY**
- Bagels: Everything, Poppy Seed, Plain
  Sliced, toasted and best bagel in NY
- Hand-sliced Ora-king New Zealand King Smoked Salmon
  Best smoked salmon in the world
- Kalona 2% Organic Cottage Cheese
  Hard to find, the best cottage cheese
- Fairway French Prunes
  Imported direct, only found @ fairway

**IT'S EASY. DON'T MISS OUT!**

TEXT "50" TO 70416

## FAIRWAY FAVORITES

**WHAT TRACY BUYS WITH $50 AT FAIRWAY**
- Fairway Apple Pie
  Best pie in NY
- Fairway Brooklyn Blend Coffee
  House roasted and only @ fairway
- Peter Luger Bacon
  The only bacon allowed in my house
- Five Acre Apple Cider
  Hot or cold, I drink it all day

**IT'S EASY. DON'T MISS OUT!**

TEXT "50" TO 70416

## FAIRWAY FAVORITES

**WHAT VINNY BUYS WITH $50 AT FAIRWAY**
- Fairway Broken Lasagna Soup
  You'll never have another soup like this
- Fairway Plain Bagels with Ben's Scallion Cream Cheese and Smoked Salmon
  Best bagel and cream cheese in NY
- Smoked Gouda Pasta Salad
  I just started buying it, now I can't stop
- Roots Mango Sriracha Hummus
  Great new item, artisan produced in small batches

**IT'S EASY. DON'T MISS OUT!**

TEXT "50" TO 70416



**INTRODUCING**

# GET $50

## FOR YOUR THANKSGIVING MEAL
## WHEN YOU SPEND $400 IN-STORE
## BEFORE NOVEMBER 23RD

### JOIN NOW. IT'S EASY!

## TEXT "50"
## TO 70416

All purchases towards the $400 goal must be made between 10/17/16 & 11/23/16. Must spend $400 to receive the $50 gift card reward. Must scan mobile card at check-out in order for purchase to count towards goal. Only valid in-store. Online orders, Catering orders, alcohol purchases or gift cards purchases do not credit towards the $400 goal. No limit on number of gift cards earned. Gift cards are not redeemable for cash. Gift cards will be delivered via image text typically with-in 48 hours of hitting the $400 goal.

FAIRWAY MARKET ALERTS (MAX 18MSG/MO). T/C'S & PRIVACY POLICY AT WWW.70416.MOBI REPLY STOP TO OPT OUT OR HELP FOR HELP. MSG & DATA RATES MAY APPLY.





## FOR YOUR THANKSGIVING MEAL WHEN YOU
## SPEND $400 IN-STORE BEFORE NOVEMBER 23RD

# TEXT "50" TO 70416

All purchases towards the $400 goal must be made between 10/17/16 & 11/23/16. Must spend $400 to receive the $50 gift card reward. Must scan mobile card at check-out in order for purchase to count towards goal. Only valid in-store. Online orders, Catering orders, alcohol purchases or gift cards purchases do not credit towards the $400 goal. No limit on number of gift cards earned. Gift cards are not redeemable for cash. Gift cards will be delivered via image text typically with-in 48 hours of hitting the $400 goal.

FAIRWAY MARKET ALERTS (MAX 18MSG/MO). T/C'S & PRIVACY POLICY AT WWW.70416.MOBI REPLY STOP TO OPT OUT OR HELP FOR HELP. MSG & DATA RATES MAY APPLY.

18.     The above call-to-action marketing materials provide consumers with certain restrictions regarding the advertised gift card (consumers must spend $400 to be entitled to the gift card, the gift card is only valid for in-store purchases and does not apply to catering orders, etc.), and say "T/C'S & PRIVACY POLICY AT WWW.70416.MOBI REPLY STOP TO OPT OUT OR HELP FOR HELP. MSG & DATA RATES MAY APPLY."

19.     None of the call-to-action marketing materials advise consumers that by texting "50" to short code 70416, they agree to receive marketing text messages generated by an automatic telephone dialing system or an artificial or prerecorded voice, from Fairway and to their telephone number.

20.     None of the call-to-action marketing materials advise consumers that by texting "50" to short code 70416, they understand that providing consent is not required to make a purchase.

21.     The "Privacy Policy" referred to in the call-to-action marketing materials specifically disclaimed Fairway's use of autodialing equipment.

> Fairway Market Alerts is a standard rated subscription alert service providing time-sensitive mobile alerts to customers that include news, invitations, promotional offers, MMS and coupons about Fairway Market. You can opt-in by texting **FMALERTS** to **70416**
>
> By signing up you agree to receive marketing text messages. <u>We do not</u>, but could, use an automatic telephone dialing system to deliver our text messages. Consent is not required to purchase goods or services.

https://web.archive.org/web/20161113172545/http:/www.70416.mobi/Shortcode/70416.htm

(emphasis supplied) (last visited Oct. 12, 2017).[1]

---

[1] The information present on the Fairway website at the time of the relevant events is stored on the Wayback Machine, a digital archive of the World Wide Web and other information on the Internet created by the Internet Archive, a nonprofit organization, based in San Francisco, California.

22.     Aside from the missing disclosures in Fairway's call-to-action marketing materials, Fairway additionally never attempted to obtain prior express written consent from consumers before sending them more than a single automated telemarketing text message.

23.     Indeed, as a general policy Fairway did not seek or obtain any written agreements from consumers, bearing their electronic or physical signature, which advised consumers that (1) by signing the agreement, they authorize Fairway to send them telemarketing calls or text messages via an automatic telephone dialing system or an artificial or prerecorded voice; and (2) the person is not required to sign the agreement or agree to enter into such an agreement as a condition of purchasing any property, goods, or services.

24.     Fairway placed automated telemarketing text messages to Plaintiff's cellular telephone number from telephone number 70416.

25.     Plaintiff messaged "50" to short code 70416 in response to a Fairway's call-to-action marketing materials to receive $50 off a future purchase.

26.     In response to Plaintiff's "50" message, Fairway began sending Plaintiff text messages from short code 70416 introducing additional promotions and discounts.

27.     At no time did Fairway seek or obtain Plaintiff's, or any class member's, signed agreement to be auto-messaged telemarketing material. Further, at no time did Fairway provide Plaintiff, or any class member, the disclosures required by 47 C.F.R. § 64.1200(f)(8).

28.     On October 18, 2016, Fairway sent a text message to Plaintiff reading: "Fairway Market: Get $10 off when you tell us your preferred store."

29.     Fairway's message also included the instruction "Reply STOP to opt-out."

30.     Plaintiff responded to the text message by sending "STOP."

31.     Fairway's system immediately responded "Fairway Market Alerts: You are opted out of all campaigns on 70416 & will receive <u>no more msgs</u>."  This was a pre-scripted response automatically sent by Fairway's system which was programmed to handle opt-out requests.

32.     However, immediately following that opt-out confirmation message—within seconds—Fairway's system sent Plaintiff two additional telemarketing messages.  The first read "Let's do this!  Here is your link to register for GET $50:".  The second message read "Tap to Load Preview," and provided a link to Fairway's website.  The specific webpage contained an offer to "GET $50" for joining Fairway's "rewards program":



**B.  Systems used to send the messages**

33.     Fairway's text messages contained pre-loaded content impersonal to Plaintiff.

34.     The text messages sent to Plaintiff's cellular phone by Defendant were made with an ATDS as defined by 47 U.S.C. § 227(a)(1) and the FCC.  Defendant's system placed the texts

automatically, using a list or database of telephone numbers and dialing without human intervention.

35.     Specifically, Fairway utilized SUMOTEXT to send automated text messages to Plaintiff without any human intervention.

36.     SUMOTEXT allows users like Fairway to collect and store consumer contact information data and then automatically send consumers text messages to those contact numbers.

37.     SUMOTEXT advertises that if its clients have "a dedicated short code, they are free to send messages via [SUMOTEXT's] online campaign management tools or via their own internal systems." *See* http://www.sumotext.com/sms-api.html (last visited Oct. 11, 2017).

38.     It touts the fact that its users can send thousands of identical text messages at the same time:

> "With 'Bulk SMS', one text message can be sent out to hundreds, even thousands of people at one time and offers the sender an amazing 95% read-rate. In most cases, the recipients will all get their message within seconds which can greatly enhance many uses such as conference call reminders or emergency alerts."

*See* http://www.sumotext.com/news/bulk-sms.html (last visited Oct. 11, 2017).

39.     SUMOTEXT also promotes its "ADVANCED DATA COLLECTION AND AUTO-INTEGRATION TRIGGERS" which "allow clients to configure SUMOTEXT to automatically update external data sources and web services like Salesforce.com or a client's Email Service Provider each time a subscriber's profile element is added or updated." *See* http://www.sumotext.com/platform-tour.html (last visited Oct. 11, 2017).

40.     SUMOTEXT can send "auto-responders" messages to consumers, which upon information and belief, automatically generate and send a text message to a consumer, without any human intervention, in immediate response to a message a consumer sent to Fairway's short code number. *See id.*  As shown above, immediately after Plaintiff messaged "STOP" to

Fairway, Fairway responded by automatically sending a subsequent message to Plaintiff.

41.     Further, SUMOTEXT can determine where consumers are located and automatically send them location-specific messages; it has "location-aware messaging [which] allows multi-unit retail or restaurant brands [like Fairway] to promote a consistent marketing message and 'call-to-action' across multiple channels and geographies while responding with targeted offers/rewards based on the location of the customer's mobile device." *Id.*

42.     In short, SUMOTEXT allows users like Fairway to store lists of telephone numbers and automatically send those numbers text messages, without any human intervention.

43.     The text messages sent to Plaintiff's cellular phone were made with an ATDS as defined by 47 U.S.C. § 227(a)(1) and the FCC, in that defendant acquired Plaintiff's Number, stored it in a database connected to its telephonic or computer system, and then used its system to send text messages to Plaintiff's cell phone number automatically and without human intervention.

44.     Sumotext's computer based system has the capacity to store or produce telephone numbers to be called, using a random or sequential number general and to dial such numbers.

45.     Sumotext's computer based system has the capacity to generate random numbers. *See* http://www.howtogeek.com/183051/htg-explains-how-computers-generate-random-numbers/ (last visited Oct. 12, 2017).

46.     Sumotext's computer based system has the capacity to generate sequential numbers. *See* https://support.office.com/en-us/article/Automatically-number-rows-76ce49e3-d8d2-459b-bd85-ee1d3973e6e6 (last visited Oct. 12, 2017).

47.     If Sumotext's system does not have the current capacity to store or produce and then dial random or sequential numbers that capacity can be trivially added.

48.     The following code could be added to the system to generate random numbers:

```php
<?php

for ($randomNumber = mt_rand(1, 9), $i = 1; $i < 10; $i++) {
    $randomNumber .= mt_rand(0, 9);
}

var_dump($randomNumber);
```

49.     This simplified PHP Code would generate random numbers in Sumotext's system.

50.     The Code, if run here http://codepad.org/O2SX7OFZ, for purposes of illustration, would generate random numbers as follows:

```
string(10) "3446780111"
```

51.     The ability to generate sequential numbers could also easily be added to Sumotext's system if it does not have it currently.

52.     For instance the following code could be added:

```php
<?php

$howManyYouNeed = 100;
$phonePrefix = 212;
$fromNumber  = 5551212;

for ($i = 0; $i < $howManyYouNeed; $i++) {
    $phoneNumber = sprintf('%3d-%07d', $phonePrefix,
$fromNumber+$i);
```

```
10        print $phoneNumber . "\n";
11    }
12

   ?>
```

53.    The Code, if run here http://codepad.org/kQQ0ZdZz, for purposes of illustration, would generate sequential numbers as follows:

```
 1    212-5551212
 2    212-5551213
 3    212-5551214
 4    212-5551215
 5    212-5551216
 6    212-5551217
 7    212-5551218
 8    212-5551219
 9    212-5551220
10    212-5551221
11    212-5551222
12    212-5551223
13    212-5551224
14    212-5551225
15    212-5551226
16    212-5551227
17    212-5551228
18    212-5551229
19    212-5551230
20    212-5551231
21    212-5551232
22    212-5551233
23    212-5551234
24    212-5551235
```

| | |
|---|---|
| 25 | 212-5551236 |
| 26 | 212-5551237 |
| 27 | 212-5551238 |
| 28 | 212-5551239 |
| 29 | 212-5551240 |
| 30 | 212-5551241 |
| 31 | 212-5551242 |
| 32 | 212-5551243 |
| 33 | 212-5551244 |
| 34 | 212-5551245 |
| 35 | 212-5551246 |
| 36 | 212-5551247 |
| 37 | 212-5551248 |
| 38 | 212-5551249 |
| 39 | 212-5551250 |
| 40 | 212-5551251 |
| 41 | 212-5551252 |
| 42 | 212-5551253 |
| 43 | 212-5551254 |
| 44 | 212-5551255 |
| 45 | 212-5551256 |
| 46 | 212-5551257 |
| 47 | 212-5551258 |
| 48 | 212-5551259 |
| 49 | 212-5551260 |
| 50 | 212-5551261 |
| 51 | 212-5551262 |
| 52 | 212-5551263 |
| 53 | 212-5551264 |
| 54 | 212-5551265 |
| 55 | 212-5551266 |
| 56 | 212-5551267 |

| | |
|---|---|
| 57 | 212-5551268 |
| 58 | 212-5551269 |
| 59 | 212-5551270 |
| 60 | 212-5551271 |
| 61 | |

54. Plaintiff's cell phone number was obtained by Defendant and stored in a database containing thousands of other telephone numbers. Defendant's text-messaging system periodically accessed Plaintiff's number within the database and sent it and thousands of other consumer's telephone numbers identical pre-scripted text messages promoting Fairway's products and services.

55. No human directed any single text message to Plaintiff's number.

56. Plaintiff messaged Defendant "STOP" expecting the telemarketing messages to stop. Plaintiff received and was frustrated and annoyed by Fairway's continued messages.

57. Plaintiff's time was wasted tending to Fairway's telemarketing text messages sent after he expressly requested that they "STOP."

58. The telephone number messaged by Defendant was assigned to a cellular telephone service for which Plaintiff incurs charges for incoming messages pursuant to 47 U.S.C. § 227(b)(1).

59. Defendant did not place the text messages for an emergency purpose.

## CLASS ACTION ALLEGATIONS

**A. The Class**

60. Plaintiff brings this case as a class action pursuant to Fed. R. Civ. P. 23 on behalf of himself and all others similarly situated.

**CLASS DEFINITION**

**All persons within the United States who, within four years of this Complaint, received on their cellular telephone at least one text message from Defendant, replied "STOP" to the text message and thereafter received at least one additional text message to the same cellular telephone number.**

61.     Defendant and its employees or agents are excluded from the Classes. Plaintiff does not know the number of members in the Classes, but believes the class members number in the several thousands, if not more. Thus, this matter should be certified as a class action to assist in the expeditious litigation of this matter.

**B.  Numerosity**

62.     Upon information and belief, Defendant sent text messages to cellular telephone numbers of thousands of consumers throughout the United States without their prior express written consent or after revocation.  The members of the Classes, therefore, are believed to be so numerous that joinder of all members is impracticable.

63.     The exact number and identities of the Class members are unknown at this time and can only be ascertained through discovery.  Identification of the Class members is a matter capable of ministerial determination from Defendant's records.

**C.  Common Questions of Law and Fact**

64.     There are questions of law and fact common to the Classes that predominate over any questions affecting only individual Class members.  These questions include:

      a.   Whether  Defendant sent non-emergency text messages to Plaintiff and Class members' cellular telephones using an ATDS;

      b.   Whether  Defendant had prior express written consent to send its automated text messages;

      c.   Whether Defendant's conduct was knowing and/or willful;

      d.   Whether Defendant is liable for damages, and the amount of such damages;
and

      e.   Whether Defendant should be enjoined from such conduct in the future.

65.     The common questions in this case are capable of having common answers. If Plaintiff's claim that Defendant routinely sends automated text messages to telephone numbers assigned to cellular telephone services without prior express written consent is accurate, Plaintiff and the Class members will have identical claims capable of being efficiently adjudicated and administered in this case.

**D.  Typicality**

66.     Plaintiff's claims are typical of the claims of the Class members, as they are all based on the same factual and legal theories.

**E.  Protecting the Interests of the Class Members**

67.     Plaintiff will fairly and adequately protect the interests of the Class and has retained counsel experienced in handling class actions and claims involving unlawful business practices. Neither Plaintiff nor his counsel has any interests which might cause them not to vigorously pursue this action.

**F.  Proceeding Via Class Action is Superior and Advisable**

68.     A class action is the superior method for the fair and efficient adjudication of this controversy. The interest of Class members in individually controlling the prosecutions of separate claims against Defendant is small because it is not economically feasible for Class members to bring individual actions.

69. Management of this class action is unlikely to present any difficulties. Several courts have certified classes in TCPA actions. These cases include, but are not limited to: *Mitchem v. Ill. Collection Serv.*, 271 F.R.D. 617 (N.D. Ill. 2011); *Sadowski v. Med1 Online, LLC*, 2008 WL 2224892 (N.D. Ill., May 27, 2008); *CE Design Ltd. V. Cy's Crabhouse North, Inc.*, 259 F.R.D. 135 (N.D. Ill. 2009); *Lo v. Oxnard European Motors, LLC*, 2012 WL 1932283 (S.D. Cal., May 29, 2012).

## COUNT I
## Violations of the Telephone Consumer Protection Act,
## 47 U.S.C. § 227, *et seq.*

70. Plaintiff repeats and realleges the above paragraphs of this Complaint and incorporates them herein by reference.

71. Defendant sent multiple automated text messages to cellular numbers belonging to Plaintiff and the other members of the Class without their prior express written consent.

72. Each of the aforementioned messages by Defendant constitutes a violation of the TCPA.

73. Plaintiff and the Class are entitled to an award of $500.00 in statutory damages for each message sent in violation of the TCPA pursuant to 47 U.S.C. § 227(b)(3)(B).

74. Additionally, Plaintiff and the Class are entitled to and seek injunctive relief prohibiting such conduct by Defendant in the future.

75. Further, Plaintiff and the Class are entitled to and seek a declaration from Defendant that:

- Defendant violated the TCPA;

- Defendant used an ATDS to send telemarketing text messages to consumers; and

- Defendant placed calls to the Plaintiff and the Class without prior express written

consent.

## COUNT II
## Knowing and/or Willful Violations of the
## Telephone Consumer Protection Act,
## 47 U.S.C. § 227, *et seq.*

76.     Plaintiff repeats and realleges the above paragraphs of this Complaint and incorporates them herein by reference.

77.     Defendant knowingly and/or willfully sent multiple automated text messages to cellular numbers belonging to Plaintiff and the other members of the Class without their prior express written consent.

78.     Each of the aforementioned messages by Defendant constitutes a knowing and/or willful violation of the TCPA.

79.     As a result of Defendant's knowing and/or willful violations of the TCPA, Plaintiff and the Class are entitled to an award of treble damages up to $1,500.00 for each call in violation of the TCPA pursuant to 47 U.S.C. § 227(b)(3)(B) and 47 U.S.C. § 227(b)(3)(C).

80.     Additionally, Plaintiff and the Class are entitled to and seek injunctive relief prohibiting such conduct by Defendant in the future.

81.     Further, Plaintiff and the Class are entitled to and seek a declaration from Defendant that:

- Defendant knowingly and/or willfully violated the TCPA;

- Defendant knowingly and/or willfully used an ATDS to message Plaintiff and the Class;

- Defendant knowingly and/or willfully disregarded Plaintiff and the Class members' requests that the automated text messages stop;

- Defendant knowingly and/or willfully messaged Plaintiff and the Class with

telemarketing text messages knowing it did not have their prior express written consent to do so;

- It is Defendant's practice and history to place automated telephone calls to consumers without their prior express consent.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff prays that the Court grant Plaintiff and the Class the following relief against Defendant as follows:

1. Injunctive relief prohibiting such violations of the TCPA by Defendant in the future;

2. Declaratory relief as stated;

3. Statutory damages of $500.00 for each and every call in violation of the TCPA pursuant to 47 U.S.C. § 227(b)(3)(B);

4. Treble damages of up to $1,500.00 for each and every call in violation of the TCPA pursuant to 47 U.S.C. § 227(b)(3)(C);

5. An award of attorneys' fees and costs to counsel for Plaintiff and the Class; and

6. Such other relief as the Court deems just and proper.

**TRIAL BY JURY DEMANDED ON ALL COUNTS**

Dated: October 12, 2017

Respectfully submitted,

By: */s/ Sergei Lemberg*
Sergei Lemberg, Esq.
LEMBERG LAW, LLC
43 Danbury Road
Wilton, CT 06897
Telephone: (203) 653-2250
Facsimile: (203) 653-3424
*Attorneys for Plaintiff*

# <u>CERTIFICATE OF SERVICE</u>

I hereby certify that on October 12, 2017, a true and correct copy of the foregoing Second Amended Class Action Complaint was served electronically by the U.S. District Court for the District of Connecticut Electronic Document Filing System (ECF) and that the document is available on the ECF system.

<div align="center">

*/s/ Sergei Lemberg*
Sergei Lemberg, Esq.

</div>